LANGLOIS *vs.* THE BUFFALO AND ROCHESTER RAIL ROAD COMPANY.

There is no obligation imposed upon a rail road corporation, so far as its servants, employed upon its engines, are concerned, to erect and maintain fences on the sides of the road; so as to render such corporation liable for an injury happening to a servant thus employed, in consequence of its neglect to fence against cattle.

Although fences along the line of rail roads, protecting the track from cattle on adjoining lands, are an important measure of security, both to the agents and servants of the companies, and to the public, yet, in the absence of a legislative provision making their erection an absolute duty to the public, the courts cannot properly impose it as a duty, and hold its non-performance to be negligence, *per se,* disregarding all other circumstances.

Under the 44th section of the general rail road act, requiring rail road corporations to erect and maintain fences on the sides of their road, and declaring that in case of omission to do so, by any corporation, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to *cattle, horses* or *other animals* thereon, the duty is one in respect to the owners of such *animals,* only; and the liability prescribed is all that is incurred by a violation of it.

DEMURRER to complaint. The complaint alleged that the plaintiff was a poor person, and was old and decrepid, so as to be unable by work to maintain himself and those for whom he was

bound to provide; that before and on the 15th day of October, 1850, the defendant was and still is a corporation, and was the owner of a rail road between the cities of Rochester and Buffalo, engaged in the business of transporting persons and property by railway between the said cities of Buffalo and Rochester. That before that time the plaintiff had hired to the defendant his son Francis Langlois, an infant under the age of 21, to wit, of the age of 17 years, to serve the defendant as a bell-ringer upon a locomotive engine of the defendant, and as such bell-ringer it was the duty of the said Francis Langlois to ride with and upon the said engine on the track of the defendant's rail road, and thereupon it became and was the duty of the defendants so to equip and maintain their said rail road with its machinery and appurtenances, and to provide and keep up such fences against the straying of cattle and other beasts into and upon the track of said road, and to employ such skillful and careful engineers and other servants to direct and manage the engines as that the said Francis Langlois should be safely and securely carried and conveyed upon the said engine, in the discharge of his duty as aforesaid. The plaintiff further alleged, that the track of the defendants' rail road aforesaid passed over and through certain lands in the county of Genesee, which at the time of the injury complained of, to wit, on the 15th day of October, 1850, were occupied by one John F. Plato, and it was the duty of the defendants as the owners of such road to erect, maintain and keep in repair good and sufficient fences along said track at the place aforesaid, and separating the same from the adjoining lands of the said Plato; that the defendants wholly neglected their duty in that behalf, and that by reason of their negligence, while the engine of the defendants with the said Francis Langlois thereon in the discharge of his duty as bell-ringer for the defendants as aforesaid, was proceeding in and along the track of said rail road, sundry cows, steers, oxen and other cattle, strayed and came over and across the place where the defendants ought to have maintained a fence, from the adjoining lands, on, to and upon the track of said rail road, and overturned the said engine and the tender attached thereto, by means whereof the said Francis

Langlois was thrown with great violence to the ground, and was thereby bruised, wounded and injured, so that he became sick and so continued until the 16th day of October, 1850, and then died thereby; and the plaintiff was obliged to, and did, pay, lay out and expend large sums of money in and about the necessary medicines and medical attendance for the said Francis Langlois, and in going with his family to visit and nurse the said Francis Langlois, and in and about his funeral and the burying of his body, and was exposed to, and did sustain, great loss of the plaintiff's time in such visiting and funeral, and was also by means of the premises, deprived of the services of the said Francis Langlois, as the servant of the plaintiff, up to the time that he should attain the age of 21 years, and of his society and comfort, and of the support and maintenance that he might and otherwise would have received of and from his said son afterwards and throughout his natural life. And the plaintiff demanded judgment for his damages by him sustained by reason of the premises to the sum of $8000.

To this complaint the defendants demurred, on the ground that it did not state facts sufficient to constitute a cause of action.

*E. Peshine Smith*, for the plaintiff. I. The duty of the defendants to maintain fences at the place where the injury occurred is sufficiently averred in the complaint as a matter of fact. (2 *Saund. R.* 114, *a, b, c. Rider* v. *Smith*, 3 *Term R.* 766. 1 *Chit. Pl.* 417.)

II. Whether or not there was such a special necessity for fences at the place where the injury occurred as to charge the defendants with want of ordinary care in not maintaining them, is a question for the jury. The circumstances establishing such necessity are matters of evidence, and should not be pleaded. (*Eaton* v. *Southby, Willes*, 131. *Eldridge* v. *Long Island R. R. Co.*, 1 *Sandf. S. C. R.* 89. *Dean* v. *Sullivan R. R. Co., Amer. Railway Cas.* 216.)

III. The doctrine that no action is maintainable against one who by wrongful act, neglect or default has caused the death of another, has never been adopted in this state. Its only ground—the forfeiture of the offender's goods to the crown—does not

apply in this country. (*White* v. *Fort*, 3 *Hawk's R.* 251. *Robison* v. *Culp*, 3 *Brevard's S. Car. R.* 302. *Reeve's Dom. Rel.* 377.) Higgins' case, as reported in 1 Brownlow, 205, and Yelverton, 89, is the fountain of the doctrine in England, but ·reports of the same case in Noy's R. 18, and 2 Rolle's Ab. 568, show that it is limited to an injury to a wife. Such action for injuries causing the death of a servant have been frequently maintained in this country. (*Ford* v. *Monroe*, 20 *Wend.* 210. *Harrison* v. *Berkley*, 1 *Strob.* 525. *Joy* v. *Wilson*, *Cheves*, 75. *Price* v. *Myrick*, 1 *Dev.* (*N. C.*) 345. *Hilliard* v. *Dortch*, 3 *Hawk*, 250. *Swigert* v. *Graham*, 7 *B. Monroe*, 661.)

*G. H. Mumford*, for the defendants. I. By the common law no action will lie for alleged negligence which results in the death of a human being. (*Higgins* v. *Butcher*, *Yelv.* 89, 90 ; *S. C. Brownlow*, 205. *Bacon's Abr. Master and Servant, P. Noy*, 18. *Felter* v. *Besle*, 1 *Salk.* 11. *Baker* v. *Bolton*, 1 *Camp.* 493. *Cary* v. *Berkshire R. R. Co.* 1 *Cushing's R.* 475.) This position is strengthened by reference to the act of 1847, (*Sess. Laws, page* 575, *amended Law of* 1849, *page* 388,) which provides a remedy in such cases, and confines the remedy to the mode there prescribed.

II. If the action could be maintained, the plaintiff has not in his complaint set forth facts sufficient to constitute a ground of action. No person can be held liable for negligence unless his negligence was in violation of a contract, express or implied, or of a duty imposed upon him by law. (*Mayor of Albany* v. *Cunliff*, 2 *Coms. R.* 165, 169. *Esp. Nisi Prius, art. Trespass on the Case*, 599. *Henly* v. *Mayor and Burgesses of Lyme Regis*, 5 *Bing*, 91. 3 *Barn. & Ad.* 77. 1 *Bing. N. C.* 222.) The complaint in the case alleges the duty of the defendants, as owners of their road, to erect and maintain certain fences, their neglect to make such fences, and that in consequence of that neglect, the plaintiff's son was killed. No contract is alleged from which this duty arose, and no facts are stated from which such duty could be inferred. This is fatal to the complaint. (*City of Buffalo* v. *Holloway*, 3 *Seld. R.* 493.)

Langlois *v.* Buffalo and Rochester Rail Road Company.

If it be claimed that the words, " *as owners of such road,*" sufficiently indicates the ground of such duty, we answer, (1.) At the common law, no person was bound to erect fences either to protect his possession, or to entitle himself to a remedy against trespasses or encroachments. *Bush* v. *Brainard*, 1 *Cow.* 78. *Stafford* v. *Ingersol*, 3 *Hill*, 38. *The Tonawanda R. R. Co.* v. *Munger*, 5 *Denio.* 255. *Ryan* v. *The Rochester and Syracuse R. R. Co.* 9 *How. Pr. R.* 453.) (2.) No facts are alleged to show the application of the revised statutes in reference to partition fences, nor do those statutes create any duty, except to the adjoining owner. (*Ryan* v. *The Rochester and Syracuse R. R. Co.* 9 *How. Pr. R.* 453.) (3.) Nor is the plaintiff aided by the 44th section of the general rail road law. (*Sess. Laws* 1850, *page* 233.) By chap. 236 of Sess. Laws of 1850, § 6, the provisions of the 44th section of the general rail road act are materially modified as to these defendants. No facts are stated in the complaint, which, under the provisions of both acts, would make the defendants liable in any case. If the defendants were organized prior to the act of 1850, the 44th section does not apply to them. (*Milliman* v. *The Oswego and Syracuse R. R. Co.* 10 *Barb.* 87.) But this section implies a duty unknown to the common law, making that penal which was not so before. It is therefore to be construed strictly, and the consequences resulting from its violation are those only which the act prescribes. (*Dwar. on Statutes*, 679.) The only effect of neglecting to fence as required by the statute, is that the company is made liable for injuries to animals upon the track. In reference to all other persons, except the owners of such animals, the duties and obligations of railroad companies remain as they were before the statute was passed. The law can scarcely impute to the defendants as an act of culpable negligence what it permits to all others. And the fact that the legislature, when this subject was fully before it, chose to limit the liability resulting from a failure to fence, shows conclusively that it did not regard the construction of such fences as a duty which the companies owed to any other persons than the owners of cattle which might otherwise stray thereon. ( *The King*

v. *Pease,* 4 *Barn. & Ad.* 30, (24 *Eng. C. L. R.* 17. *Ricket* v. *The East and West India Docks and Birmingham Junction Railway Co.* 12 *Com. Bench R.* 74 *Eng. C. L. R.* 160.)

III. If the defendants were bound to fence, and this duty had been neglected by their agents, no action could lie by this plaintiff, who had voluntarily hired his son to the defendants as a bell-ringer on their train. (*Farwell* v. *Boston and Worcester R. R. Co.,* 4 *Metcalf,* 49. *Brown* v. *Maxwell,* 6 *Hill,* 592. *Hayes* v. *Western R. R Co.,* 3 *Cushing,* 270. *Coon* v. *Syracuse and Utica R. R. Co.,* 1 *Selden,* 492.)

T. R. Strong, J. The ground upon which it is claimed the defendants are liable in this case, is, that it was their duty as owners of their road, in respect to their servants employed on their engines, to erect, maintain and keep in repair, good and sufficient fences along the track of their road, and separating their road from the adjoining lands at the place where the injury in question occurred; and that they neglected to perform that duty, whereby the injury was occasioned. The existence of the duty is an essential element in the position; without it, there is no negligence, and consequently no liability. By § 44 of "the act to authorize the formation of rail road corporations and to regulate the same," (*Laws of* 1850, *p.* 233,) which is applicable to the defendants, to a qualified extent, (*Id. p.* 465, 468, § 6,) an obligation is imposed upon rail road corporations to erect and maintain fences on the sides of their road; and the consequence of omitting to do so by any corporation is declared to be, that "the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses or other animals thereon." The duty under this statute provision, is one in respect to the owners of such animals, only; and the liability prescribed is all that is incurred by a violation of it. There is no other statute imposing a duty upon the defendants to fence their road; and hence if the duty alleged in this case existed, it must rest on the common law. It must arise from the principle that by the common law such

corporations are required to use ordinary care for the safety of their servants. Did ordinary care by the defendants, for the safety of the son of the plaintiff, demand the fences which the defendants are charged with neglect in not making ? It is not shown that there was any special necessity for fences at the point where the injury occurred, nor is it alleged that there was any want of care, on the part of the defendants, except in not providing fences. Did, then, ordinary care require such fences whatever circumstances existed having reference to the necessity of fences at that place, and whatever other precautions were employed, to prevent accidents ? If not, the plaintiff fails to maintain the duty he asserts, and of the breach of which he complains.

It is undoubtedly true that fences along our lines of rail roads, protecting the tracks from cattle on adjoining lands, are an important . measure of security, both to the agents and servants of rail road corporations, and to the public ; but in the absence of a legislative provision making their erection an absolute duty to the public, can the courts properly impose it as a duty, and hold its non-performance, *per se*, negligence, disregarding all other circumstances ?

I do not feel at liberty to go to the extent which this case calls for, upon the question of the duty of the defendants, in order to maintain the action, and must therefore order judgment in favor of the defendants, on the demurrer, with leave to the plaintiff to amend on payment of costs.

[MONROE SPECIAL TERM, January, 2, 1854, *T. R. Strong*, J. Affirmed on appeal, at the Monroe General Term, March 5, 1855, held by *Selden, Johnson* and *T. R. Strong*, Justices.]