# THE WABASH RAILWAY COMPANY

## v.

# CHARLES W. BROWN, Adm'r.

1. RECEIVER—ACTION AGAINST FOR TORT—CHANCERY HAS NO JURISDICTION.—It is in the discretionary power of a court appointing a receiver of a railroad, to investigate claims arising from the negligence of the receiver, or allow suits at law to be brought against him therefor, but so long as the claim exists in the form of a right of action for unliquidated damages growing out of a tort—as for the death of an employe, occasioned by the negligence of a receiver in keeping the road fenced—there is no rule that gives a court of chancery jurisdiction to hear and determine the matter upon a bill filed for that purpose. If the claim had been established by a judgment at law or by the allowance of the court having jurisdiction over the receiver, a court of chancery might enforce the lien by a bill filed for that purpose, but until that is done it has no jurisdiction.

2. RAILROAD—NOT BOUND TO MAINTAIN FENCE AS PROTECTION TO EMPLOYES.—The court cannot say that it is a common law duty owed by a

railroad company to its employes to keep its road so fenced that cattle may be prevented from straying thereon, and if this be so, even a willful neglect to fence the road would not, of itself, constitute guilty negligence.

3. Fencing track—Construction of statute.—The statutory requirement that railroads shall fence their track so as to prevent cattle from entering thereon, was intended for the protection of owners of such cattle as might be injured by reason of a failure to fence the track, and creates no new right in favor of employes of the road.

Appeal from the Circuit Court of Sangamon county; the Hon. C. S. Zane, Judge, presiding. Opinion filed January 30, 1880.

Messrs. Hay, Greene & Litler, for appellant; as to consolidation of railroads and assumption by purchasers of debts of old road, cited St. L. A. & T. H. R. R. Co. v. Miller, 43 Ill. 199.

When the employe has means of knowing of the existence of a particular danger and yet continues his employment, he cannot recover: East St. Louis Packing Co. v. Hightown, 2 Ill. Syn. Rep. 232.

Upon the extent of the duty of a railroad company to fence its track: Stucke v. M. & M. R. R. Co., 9 Wis. 202; Alton & Sangamon R. R. Co. v. Baugh, 14 Ill. 211; Rev. Stat. 769.

Mr. N. M. Broadwell, for appellee; upon the right to sue a receiver for a tort without obtaining leave, cited Allen v. Railroad, 42 Iowa, 683; Kinney v. Crocker, 18 Wis. 74; Blumenthal v. Brainerd, 38 Vt. 402; Camp v. Barney, 11 N. Y. 373; Murphy v. Holbrook, 20 Ohio St. 137.

That a court of chancery has jurisdiction: Morgan v. Roberts, 38 Ill. 65; 1 Story's Eq. § 64.

The deceased had a right to presume that the road and accessories would be kept in safe condition, and is not presumed to know of defects: C. & N. W. R. R. Co. v. Swett, 45 Ill. 197; Dale v. Railroad, 63 Mo. 455.

As to duty of fencing track: Seeley v. Peters, 5 Gilm. 130; Cooley on Torts, 655; O. & M. R. R. Co. v. McClelland, 25 Ill. 140; T. P. & W. R. R. Co. v. Pence, 68 Ill. 524.

The fact that the railroad was being operated by a receiver gives no exemption from liability: Murphy v. Holbrook, 20

Ohio St. 137; Camp v. Barney, 11 N. Y. 373; Blumenthal v. Brainerd, 38 Vt. 402; Kinney v. Crocker, 18 Wis. 74; Allen v. Railroad, 42 Iowa, 683.

McCULLOCH, J. This was a bill in chancery somewhat novel in character, based upon the following alleged state of facts. On the tenth day of July, 1875, one Burns Roberts, appellee's intestate, was fireman on an engine running upon a road operated by J. D. Cox, receiver of the Toledo, Wabash & Western Railway; that while so acting as fireman the engine was overturned, by which said Roberts lost his life; that said accident occurred by reason of said engine running against some cattle that were lying on the track of the railroad; that the running of the engine against said cattle was not the fault of Roberts but on the contrary, he was carefully performing his duty; that said cattle got on said railroad through the negligence of said receiver, who was operating said road, and who was negligent in this, that he failed to keep a lawful fence along the track of said road, such as the law required, sufficient to keep stock from getting on the road; that said receiver failed to do this, and was grossly negligent, endangering the lives of employes and passengers. That he knowingly and willfully allowed the fences along said road to become so frail and insufficient as not to be secure against stock, and to remain in a frail condition about two months previous to the accident, and that said cattle got on said road through said poor and insufficient fence; that Roberts left surviving him a widowed mother who was depending on him for support, who is left destitute by his death.

The bill further alleges that Cox was appointed receiver by the concurrent orders of the Court of Common Pleas of Lucas county, Ohio; the Circuit Court of Cass county, Indiana, and the Circuit Court of Vermillion county, Illinois, said order having been made in suits pending in said courts; that on or about the 10th day of June, 1876, said railroad was, by virtue of proceedings had in such suits, sold to John W. Ellis, A. M. White, J. T. Martin, G. I. Seevey and H. A. V. Post; that said sale was confirmed by said courts, and the railway, and all its property and franchises conveyed to said purchasers, who took

possession thereof; that on the 12th day of January, 1877, said purchasers conveyed said railroad, with its equipments, to the Wabash Railway Company (appellant), and said company accepted the same, subject to said deed, and has been and still is in possession of the same under said deed; that in and by said deed under which appellant holds said railway it is expressly provided as follows: "That the said estate and interests are hereby charged with, and shall pass by virtue of these presents, subject to the payment of all liabilities incurred in respect to said railway or its business, by the said Jacob D. Cox, as receiver, during the pending of the legal proceedings above mentioned." The bill then avers that the proceedings so mentioned were the suits aforesaid; that by the provisions of said deed and the acceptance thereof by said company, the said railway is chargeable in equity with the lien for the payment of complainant's claim, it being one of the liabilities mentioned in said deed. The bill makes appellant defendant, prays that an account be taken of what is due complainant; that the same be declared a lien upon the railway and that appellant be required to pay the same or the road be sold in default thereof.

Appellant answered the bill, denying the charge of negligence, admitting the sale of the road and the transfer of the same to appellant as charged in the bill, but denying that by virtue of the clause in said deed, recited in the bill, the said road is charged with a lien for the payment of complainant's alleged claim. The answer also sets up that appellee presented his claim to the Circuit Court of Vermillion county by petition, in the cause wherein said Cox was appointed receiver; that said court sustained a demurrer to said petition long before the filing of the bill in this cause; that thereupon, complainant dismissed his said petition without leave to file the bill in this cause. The answer further states that said Cox and George I. Seevey are necessary parties. The bill was afterwards amended by making the last named persons defendants, on account of some alleged interest in the property. Cox answered the bill, denying negligence and knowledge of the condition of the fence at the time of the accident; alleging that Roberts had a better opportunity of knowing the condition of

the fence than said Cox, but never gave any information thereof; that complainant has not established his alleged claim against respondent as receiver, nor does complainant proceed against him as receiver. The remainder of the answer is in substance the same as that of appellant. Seevey did not answer the bill, but was defaulted.

Upon a hearing upon bill, answers, replications and proofs, the court found that said Roberts came to his death by reason of the negligence of said Cox, and that the damages amounted to twenty-five hundred dollars. The decree finds the facts substantially as alleged in the bill; that the amount of damages was a lien upon said railroad; and that unless the same be paid to appellant within thirty days from the date of the decree, together with the costs of suit, the said railway, its appurtenances and equipments, or so much thereof as shall be necessary to pay said sum and the costs, be sold by the master in chancery to raise money to pay the same; and that he make and deliver all necessary deeds of conveyance of the property so sold.

This case was before this court on a former occasion, when it was reversed and remanded for want of sufficient evidence to sustain the charge of negligence. It was also somewhat pointedly intimated, although not decided, that the law might not give a right of action in favor of employes against railroad companies for a failure to fence their roads as required by statute. Appellee having rested his case, upon the second hearing, upon the bill as it stood when the cause was here before, we do not consider it necessary to re-examine the case upon the evidence, as we would not be likely to reverse it a second time for that reason alone. There is evidence in the record tending to show that the fence alluded to was, at the time of the alleged accident, in an insufficient condition to turn stock, and if the said Cox did not have actual knowledge thereof, it had been in that condition long enough for him, in the exercise of reasonable care, to have known it.

But we are of the opinion, that, in the present attitude of the claim, it does not come within the jurisdiction of a court of chancery. It is claimed that the railway passed into the hands

of appellant, charged with a lien, or clothed with a trust to pay all the liabilities incurred in respect to the said railway or its business by the receiver, during the pendency of the legal proceedings. We are not now prepared to say, nor do we deem it material to the case to determine the scope and meaning of the terms made use of in the deed creating this charge upon the road. Nor does it appear from anything alleged in the bill that the court ordering the sale created such a charge by its decree. All there is of it is that the purchasers under the decree afterwards conveyed the road to appellant, and in their deed of conveyance created the charge, and that the property was taken by appellant subject thereto.

We think it safe to say that no case can be found wherein a court of chancery has assumed jurisdiction to investigate and determine a question of unliquidated damages for personal injuries growing out of a tort committed by one person against another. In possibly a few cases the court of chancery may have awarded damages for a wrongful or fraudulent conversion of trust funds, but such cases are rare. The question before the court now is, whether after an injury has been committed for which an action at law would have been the proper remedy, parties interested in the road can by their contract so change the status of affairs as to compel the court of chancery to take jurisdiction over, and to determine a question over which it had no jurisdiction in the beginning. Counsel for appellee admit and insist that for the injury complained of, an action at law would lie against the receiver; for which they cite Allen v. Railroad, 42 Iowa, 683; Kinney v. Crocker, 18 Wis. 74; Blumenthal v. Brainerd, 38 Vt. 402, and Murphy v. Holbrook, 20 Ohio St. 137. All of which seem to sustain their position. As the receiver, although in some respects the agent of the court, is also the agent of the company, we can see no good reason why an action against the company, might not also be maintained for the negligence of the receiver.

It is also within the discretionary power of the court appointing the receiver to investigate such claims, or to allow suits at law to be brought against the receiver for the same, and when established to the satisfaction of the court, to order them paid

as a part of the expenses of the receivership. But so long as the claim exists in the form of a right of action for unliquidated damages growing out of a tort, we are not aware of any rule that would give the court of chancery jurisdiction to hear and determine that matter upon a bill filed for that purpose. Were the claim established either by a judgment at law or by the allowance of the court having jurisdiction over the receivership, then we apprehend a court of chancery might enforce the lien upon a bill filed for that purpose. But until that is done, the court of chancery, in order to ascertain whether or not a lien exists, must first try an action on the case for negligence and ascertain the amount of damages, if any, to be awarded before it has any right to say a lien exists. The primary object of the bill in such case, would be the award of damages, the secondary object would be the enforcement of the lien. Mr. Story (2 Eq. Juris. § 794) says: "It may be stated as a general proposition, that, for breaches of contract, or other wrongs and injuries cognizable at law, courts of equity do not entertain jurisdiction to give redress by way of compensation or damages, where these constitute the sole objects of the bill. For, wherever the matter of the bill is for damages merely, and there is a perfect remedy therefor at law, it is far better that they should be ascertained by a jury than by the conscience of an equity judge. Clifford v. Brooke, 13 Ves. 130–4; Blore v. Sutton, 3 Meriv. 247–8; Newham v. May, 13 Price, 749–52; Wiswall v. McGowan, 2 Barb. 270; Shepard v. Sanford, 3 Barb. Ch. 127. And although, in cases for specific performance of contracts, if the defendant has disabled himself, in part, to perform the contract, the court of chancery may give compensation in damages for such part, yet if he has disabled himself *in toto* before bill filed, and complainant knew that fact before commencing suit, he cannot have damages in that form, but will be sent to a court of law . Doan et al. v. Mauzy, 33 Ill. 227, citing Kempshall v. Stone, 5 Johns. Ch. 195; Hatch v. Cobb, 4 Id. 559; Morse v. Elimendeff, 4 Paige, 277; Lewis v. Gale, 4 Flo. 437; 3 Lead. Cas. Eq. 91; McQueen v. Choteais's Heirs, 20 Missouri, 222.

These cases fully sustain the doctrine that a court of chan-

cery will give compensation in damages only where they become incidental to other relief sought and granted by the decree. In this case the only relief sought, is damages for the negligent killing of appellee's intestate, through the negligence of said Cox, and as incidental thereto, the collection of the sum found due by the enforcement of a lien upon the road.

We are therefore of the opinion that before a bill will lie for the purpose of enforcing the lien, the claim for damages must be first ascertained by a judgment at law, or by an allowance thereof, as a valid claim against the receiver, in the court having jurisdiction over his appointment. The court of chancery of Vermillion county, had, at the time of this accident, full jurisdiction over the road and all its revenues, and no doubt had before it all necessary parties, whose interests could in any way be affected by its decree. It is now the well established practice that all parties, having claims either against the road or against the receiver, may come into that court by intervening petition and have their claims adjudicated, or by leave of that court may institute suits at law therefor. Appellee, after once going into that court, voluntarily abandoned it and took his chances by filing an original bill in another county, after the road had been sold. We cannot see that his claim rests upon any peculiar equity which should call for proceedings so extraordinary in their character as those presented in this record.

Upon further examination of the question of appellee's right of action upon the facts alleged in the petition, we are of the opinion no action can be maintained. We cannot say that it is a common law duty owed by a railroad company to its employees to keep its road so fenced that cattle may be prevented from straying thereon. And if this be so, even a willful neglect to fence or keep the road fenced in a proper manner to turn stock, would not of itself constitute guilty negligence towards them. Circumstances might possibly be shown where, in the exercise of that care which the company owes to its employes, it might be necessary to fence the road, and a neglect to do so might be culpable negligence; but no such case is made by the bill in this case. It relies wholly upon the neglect of a statutory duty.

We cannot construe our statute as being an enactment for the protection of the company's employes from harm by reason of stock getting on the track. It provides (R. S. 1874, 807,) that when the fences are not made and maintained in repair according to the act, the company shall be liable for double the amount of damages done to the cattle, sheep, hogs or other stock on the track, but makes no provision for damages resulting therefrom to the employes of the company. And it is only where an action could have been maintained by the injured person had death not ensued, that an action can be maintained by his administrator in case of his death. R. S. 1874, 582. The fact that double damages are provided for by the statute in case of the killing of stock, and no mention made of damages for any other class of injury, goes very far to prove the legislature never intended by this enactment to impose any new duty upon the company towards its employes or passengers, but to protect the owners of stock only. These views are supported by English as well as American authorities. Redfield on Railways, 490; Shearman & Redfield on Negligence, § 469; Buxton v. U. E. Railway Co. 3 Law Rep. 3, Q. B. 548; Langlois v. Buffalo R. Co. 19 Barb. 364.

We are therefore of opinion, without reviewing the evidence, that this bill cannot be maintained. The decree is therefore reversed, and the bill dismissed.

Decree reversed.