## The Illinois Central Railroad Company

### *v.*

## William H. Sanders.

*Filed at Mt. Vernon April 1, 1897.*

1. TRIAL—*when plaintiff in a personal injury suit is entitled to have his case go to the jury.* In a suit by a brakeman against a railroad company for damages for injuries received from coupling cars, the plaintiff is entitled to have his case considered by the jury if the evidence tends to prove ordinary care on his part and negligence on the part of the company.

2. MASTER AND SERVANT—*railroad company must furnish reasonably safe track within switching limits.* A railroad company must furnish a track within switching limits reasonably safe for the performance of the work required, and its servants, in the absence of knowledge to the contrary, may presume that the company has discharged its duty in that regard.

3. SAME—*brakeman not required to know of all defects in construction along the company's line.* The law does not require that a railroad brakeman should know, absolutely, all the defects of construction and all the obstructions which may exist along the company's line

4. SAME—*what not sufficient to charge brakeman with notice of defective track.* The fact that a brakeman had been on a local run for some three weeks, and had passed over the road twice each day, is not sufficient to charge him with notice of the unsafe and defective condition of the track within the switching limits at one of the way stations.

5. SAME—*servant not required to test machinery and investigate surroundings.* In the absence of notice of defects a servant owes no primary duty to test the machinery furnished by the master for the performance of his duties, or to investigate the surroundings connected therewith, where such performance requires his constant attention to other matters.

6. INSTRUCTIONS—*instructions must be predicated on the evidence and confined to the issues.* Instructions must be predicated on the evidence and confined to the issues of the case.

*Illinois Central Railroad Co.* v. *Sanders,* 66 Ill. App. 439, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

This was an action brought by William Henry Sanders, against the Illinois Central Railroad Company, to recover for a personal injury received on the 22d day of February, 1892, while in the service of the company as a brakeman. The declaration contained four counts, but as the fourth count contains a more accurate statement of the plaintiff's cause of action than the other counts it will only be necessary to refer to that one.

It is alleged that on the 22d day of February, 1892, at the village of Edgewood, plaintiff was in the employ of the Illinois Central railroad company as brakeman, and it became and was his duty to assist in switching and transferring cars of the defendant; "and it then and there became and was the duty of the defendant to the said William Henry Sanders to keep and maintain that portion of its main tracks in the vicinity of said side-tracks, as aforesaid, over which it was necessary for its brakemen to pass in order to do said switching, in a safe and proper condition, so as not to expose the said William Henry Sanders to any unnecessary exposure to danger or liability of accident; and it was then and there the duty of the defendant to have filled in the space between and underneath the ties of its said railroad track with cinders or other substance, and not to then and there leave open and uncovered a ditch, culvert, water-course or cattle-guard, so that in standing and walking on the said track, in order to couple its said cars, a brakeman would not be exposed to unnecessary danger or liability to catch his foot between said ties, or stumble or trip over the same, or catch his foot in such open and uncovered ditch, culvert, water-course or cattle-guard; but the said defendant, not regarding its duty in that behalf, carelessly and negligently permitted that portion of its main track in the vicinity of its said switch and side-tracks to be and remain in unsafe repair and condition, and then and there carelessly and negligently permitted

certain ties thereof to be and remain above the surface of the ground, and neglected and failed to have the spaces underneath and between said ties filled with cinders or other substance, and neglected and failed to have an open ditch, culvert or water-course and cattle-guard then and there situate underneath and in that portion of its said main tracks near said switches and side-tracks, and over which the said Sanders was obliged to walk and pass in doing said switching and making said coupling, properly and suitably covered over with a suitable foot-passage thereon and thereover, so that the said Sanders could walk and pass over the same, as he was obliged to do, without incurring any unnecessary danger of catching his foot or stumbling or tripping thereon, and thereby the said William Henry Sanders, while standing and walking upon said portion of said main track, as he was obliged to do in order to make a coupling between the cars in the head end with the cars in the rear end of defendant's train, in the line of his employment pursuant to his duty, not knowing the defective condition of said track, as aforesaid, was then and there exposed to unnecessary danger and liability to accident, and then and there, while so engaged in making the coupling between the defendant's cars, as aforesaid, standing and walking upon the said portion of said main track, using due care and diligence for his own personal safety in the line of his duty, one of his feet became entangled, caught and fastened between and underneath two of said ties of said portion of defendant's main track, and he then and there necessarily and unavoidably slipped into and caught his foot in said open and uncovered ditch, culvert, water-course and cattle-guard, and the plaintiff was then and there thrown with great force and violence, and by the momentum of the cars he was so engaged in coupling, necessarily and unavoidably fell to and upon the rails and ties of said side-track, and divers wheels of one of defendant's cars which plaintiff was then and there en-

gaged in coupling, then and there ran and passed over his right leg, whereby he was injured," etc.

To the declaration the defendant pleaded the general issue, and on a trial before a jury the plaintiff recovered a judgment against the railroad company, which, on appeal, was reversed in the Appellate Court. On a second trial the plaintiff again recovered, and the second judgment was affirmed in the Appellate Court.

Appellee, at the time of his injury, was about twenty-six years old. He had been in the employ of the railroad company about three years as a brakeman and switchman on the division of its road extending from Centralia south to Cairo, and in the switch yards at Centralia. About the first of February, 1892, he was transferred to a run from Centralia to Effingham, as a brakeman on a local freight train making daily trips. There were employed on this train an engineer, fireman, conductor and three brakemen, of whom appellee was one, designated as the head brakeman. This train was scheduled to leave Centralia every morning and make the trip to Effingham, a distance of some fifty-two miles, and to return to Centralia the evening of the same day, about five or six o'clock. This train crew were required to load and unload all freight at stations along the line, and to switch and transfer all cars to and from the sidings and switch tracks to the main tracks. On the 22d day of February, 1892, the train upon which appellee was employed left Centralia on time, made the trip north to Effingham, and then started on the return trip south, reaching Edgewood about 4:30 P. M. As the train approached the village it was cut in two by uncoupling two cars four cars from the rear. The rear portion of the train followed the forward portion down and inside the switch yards of the village and stopped, the south rear car standing over a trestle crossing a ravine or depression six or seven feet in width. The switch yards contained, in addition to the main track, a passing track and a house track, connected to the main

16C—18

track at the north end of the yards, and running south past the depot, on the west side of the main track, where they were again connected; also a "Y" track extending from appellant's main track to a branch of the then Ohio and Mississippi Railway Company, which crossed appellant's road at that point. These tracks, together with the main track, were all used in the switching, coupling, uncoupling and transfer of cars in this switch yard. Appellee was on the forward portion of the train. As it came into the village two cars were thrown in on the "Y," then some cars were switched from the house track onto the main track, and the forward portion of the train was started back to couple on the rear end standing in the north part of the yards. The north car in the forward portion of the train was a Missouri Pacific box car with a high draw-head. The south car in the rear portion of the train, with which the coupling was to be made, was an Illinois Central box car with a low draw-head, and the coupling-pin was somewhat bent or crooked. Appellee rode back on the west side of the south end of this Missouri Pacific box car as it was backed up to make the coupling. As it approached the rear end of the train he climbed down the side ladder and was engaged in giving the engineer signals. When within about a car length of the rear end he got off, and walked beside the car rapidly enough to get to the north end of it before it struck the Illinois Central car. At the same time another train of cars of appellant came in on the passing track, directly west, the space between the two trains being only six or eight feet. Appellant stepped on the track, with one foot over the rail, and took hold of the link, and as the cars came together endeavored to force down the pin to complete the coupling, but the pin did not go down. The momentum of the forward portion of the train striking the rear standing cars moved all back north. Appellee, still endeavoring to make the coupling, walked along between the two cars. While thus engaged his left foot

went down between two of the ties and was caught underneath them, where the dirt had been removed.   He had hold of the car in front of him with his left hand and clung to it.   The other car following struck him in the back, and with his left foot caught fast under the tie, he stepped forward with his right foot to preserve his balance and to keep from falling.   Instead of striking a firm footing, his right foot went into the trestle or cattleguard, between the ties.   Holding with his left hand onto the side ladder of the car he was facing, he managed to throw his body out to the left, and this wrenched his left foot loose, but before he could extricate his right limb from the trestle two wheels of the Missouri Pacific car passed over his limb above the knee, breaking the bone and mangling the flesh.

WILLIAM H. GREEN, (JAMES FENTRESS, of counsel,) for appellant:

An employer is not bound to furnish for his workmen the safest machinery, nor to provide the best methods for its operation, in order to save himself from responsibility from accidents resulting from its use. *Railroad Co.* v. *Lonergan*, 118 Ill. 48,

A servant is chargeable with actual notice of every fact which he would have known had he exercised ordinary care to keep himself informed as to matters concerning which it was his duty to inquire.   Shearman & Redfield on Negligence, sec. 217.

When an employee, after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain if he is subsequently injured by such exposure. *Railway Co.* v. *Britz*, 72 Ill. 261.

While questions of negligence or of contributory negligence are ordinarily questions of fact to be passed upon by a jury, yet when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict in opposition to it, the court may withdraw the

case from the consideration of the jury and direct a verdict. *Railroad Co.* v. *Houston,* 95 U. S. 697; *Shofield* v. *Railway Co.* 114 id. 615 ; *Railroad Co.* v. *Converse,* 139 id. 469; *Aerkfetz* v. *Humphrey,* 145 id. 418.

There must be evidence tending to establish each and all of the facts necessary and sufficient to sustain a verdict. *Syrup Co.* v. *Carlson,* 155 Ill. 210.

Before a plaintiff can recover damages for an injury caused by the defendant's negligence he must aver and prove the absence of contributory negligence on his own part. *Gerke* v. *Fancher,* 158 Ill. 379.

Samuel L. Dwight, and Frank F. Noleman, for appellee:

Where the discharge of one's duty necessarily exposes him to a great and imminent danger, which is a constant attendant upon the duty, the same degree of care is not exacted of him to ascertain and to avoid other dangers which are not imminent and constant as though he were free to exercise his faculties to inspect his surroundings and discover such incidental hazards. 16 Am. & Eng. Ency. of Law, 403; *Railway Co.* v. *Hines,* 132 Ill. 151.

An employee has a right to act upon the theory that his employer has used reasonable diligence to provide reasonably safe appliances, and if his attention has not been called to a defect or danger, and the same is not obvious, he is not chargeable with notice of insecurities which could only be discovered by a careful inspection. *Matting Co.* v. *Paulson,* 51 Ill. App. 123; *Iron Works* v. *Webber,* 31 id. 306.

The law does not require of a brakeman that he should absolutely know all the defects of construction and all the obstructions there may be along the line of the railroad, and that he should neglect the performance of his duties to be on the constant lookout for such obstructions and defects. *Railroad Co.* v. *Johnson,* 116 Ill. 206.

The master is bound to use reasonable care in providing safe machinery, appliances, surroundings, etc., and the servant, in the absence of notice that the machinery, surroundings, etc., are unsafe or defective, has a right to rely upon the discharge by the master of his duty in respect to these things. *Coal Co.* v. *Kelly,* 54 Ill. App. 626; Wharton on Negligence, sec. 211; *Railway Co.* v. *Fredericks,* 71 Ill. 294; *Railroad Co.* v. *Holman,* 155 id. 21; *Railroad Co.* v. *Gregory,* 58 id. 273; *Railroad Co.* v. *Avery,* 109 id. 314.

Mr. Justice Craig delivered the opinion of the court:

It is first claimed in the argument that the Appellate Court erred in failing to give the reasons of the court for the opinion affirming the judgment of the circuit court. In affirming the judgment the Appellate Court filed an opinion purporting to show the grounds upon which the judgment of the court was predicated.

The main objection to the opinion is, that it fails to discuss the facts. We shall not stop to discuss the question whether error can be predicated on the fact that an opinion of the Appellate Court may contain too much or too little, or whether it may be too long or too short. It is sufficient in this case to say, when the case was first before the Appellate Court the facts were fully discussed, (see *Illinois Central Railroad Co.* v. *Sanders,* 58 Ill. App. 117,) and as the facts were substantially the same on the second appeal, no necessity existed for a repetition of the discussion found in the first opinion.

The principal ground relied upon by appellant to reverse the judgment is the refusal of the circuit court to instruct the jury to find for the defendant. This is predicated on the assumed position that there was no evidence tending to prove the exercise of ordinary care on behalf of appellee, and no evidence tending to prove culpable negligence on behalf of the railroad company. If there was no evidence whatever tending to prove that the plaintiff was in the exercise of due care at the time

he was injured, it is well settled by numerous decisions of this and other courts that he could not recover. Indeed, in a case of this character the exercise of ordinary care is indispensable to a recovery. So, also, if there was no evidence whatever tending to prove negligence on behalf of the defendant the plaintiff could not recover. It will be remembered that the car where the coupling was to be made was left standing over an old cattle-guard, and there was evidence tending to prove that the ties south of the cattle-guard over which appellee was required to pass in making the coupling, were above the surface of the ground, and the spaces underneath and between the ties were not filled with earth or other substance, so that a person could pass over them without stumbling or getting his foot fastened. In other words, the track where the coupling was required to be made was not smooth or level, but dangerous; and the evidence tends to prove that when appellee stepped between the two cars and attempted to make the coupling his left foot went down between two ties and was caught underneath them, where the dirt had been removed, and when he stepped forward with his right foot to keep from falling, his right foot did not strike a level footing, but went into the cattle-guard.

The law does not require a railroad company to furnish machinery, tracks and switches for their employees which are of the best character or that are absolutely safe, but the duty imposed is to use reasonable and ordinary care and diligence in providing safe machinery, tracks and switches for the use of those engaged in its service. (*Chicago, Rock Island and Pacific Railroad Co.* v. *Lonergan,* 118 Ill. 41.) But this rule, as the evidence tends to show, was not observed. The evidence seems to show that, as a general rule, railroad companies, at stations within switching limits, have their tracks filled up to the level of the ties, so that brakemen may walk over the ties in coupling cars without stumbling or fall-

ing. If this precaution had been observed it is apparent appellee's foot, in attempting to couple the cars in question, would not have been caught under the ties, and he would not have stepped into the cattle-guard and received the injury.

But it is said, conceding appellant permitted certain ties to remain above the ground and neglected to have the spaces underneath and between the ties filled with a proper substance, and neglected to have the cattle-guard properly covered with a suitable passage, yet as these defects were not concealed, and appellee saw them or might have seen them, and having notice, he voluntarily took the risk arising out of the danger. If the plaintiff knew, or by the exercise of ordinary diligence might have known, that the track and the cattle-guard were dangerous, and knowing these facts attempted to make the coupling and was injured, he ought not to recover. But the plaintiff testified, and in this he is not contradicted, that he had no knowledge whatever that the track where the coupling was attempted was out of repair. The law required the railroad company to furnish a reasonably safe track inside the switching limits where switching was required to be done, and the plaintiff, in the absence of knowledge to the contrary, had the right to presume that the railroad company had discharged its duty in this regard. It is true that the plaintiff had been on this run for three weeks before the accident, and had passed over the track twice every day during that time; but in making a round trip of one hundred miles, and doing all the switching required in ten or twelve switch yards, besides handling all the local freight, as was done by the crew of the train with which plaintiff was connected, it is unreasonable to suppose that the plaintiff would in so short a time become familiar with the condition of the track where switching was required to be done along the entire line from Centralia to Effingham. The ruling in *Chicago and Alton Railroad Co.* v. *John-*

*son,* 116 Ill. 206, that the law does not require a brakeman upon a freight train absolutely to know all the defects of construction which may exist along the line of the railroad is applicable here.

But it is said, the defective track and cattle-guard were in plain view, and might have been seen by the plaintiff if he had looked. The coupling of cars is a dangerous service. The work has to be done instantly when the cars come together. A slight mis-step or a false movement on the part of the brakeman may expose his life or limbs to danger. Hence it is apparent that when a brakeman undertakes to make a coupling he has no time to investigate the track and determine whether it is defective or safe. His whole attention is directed to the cars that are coming together and the dangerous act he is required to perform, and it cannot be expected that he will stop in the performance of his duty to examine the condition of the track. What was said in *Chicago and Eastern Illinois Railroad Co.* v. *Hines,* 132 Ill. 161, applies here. It is there said (p. 169): "The burden of furnishing safe machinery, appliances, surroundings, etc., is upon the master, and while the master is not to be held liable for defects and dangers of which the servant is fully informed, yet the servant is authorized to rely upon the acts of the master in that respect, and is under no primary obligation to investigate and test the fitness and safety of the machinery, surroundings, etc., in the absence of notice that there is something wrong in that respect. (Shearman & Redfield on Negligence,—2d ed.—sec. 95; Bishop's Non-Contract Law, sec. 678; *Porter* v. *Hannibal and St. Joseph Railroad Co.* 60 Mo. 16.) And, necessarily, much more is the servant entitled to assume that his master has furnished him with suitable and safe materials, machinery and surroundings, and relieved him of investigation and inquiry in this regard, where * * * the performance of his duties requires constancy of attention to other matters. A man whose attention is constantly directed to moving cars, .

and their coupling and uncoupling, cannot possibly give much attention to the ties, switch-bars, etc., over which he may from time to time have to pass." Here, when the coupling was attempted, plaintiff was between two trains. His whole attention was directed to the coupling of the train. He saw no defect in the track, and the cattle-guard was not in plain view from his position. The white wing-fence which came up to it on the west side had been torn away and the east wing-fence could not be seen. Under such circumstances plaintiff could not be charge-able with notice of the defective condition of the track.

Under the facts as they appear in the record we are of opinion that the court did not err in refusing to in-struct the jury to find for defendant.

It is claimed that the court erred in refusing instruc-tion No. 7, as follows:

"The court further instructs the jury, that for the protection of live stock that all railroads were by law required to fence their road by good and sufficient fence along both sides of their right of way, and to erect cattle-guards at highway crossings and other places to prevent live stock from getting upon their road and right of way, and the defendant had a lawful right to erect all cattle-guards necessary to so protect live stock and prevent stock trespassing on the road and right of way."

It is a familiar rule that instructions should be predi-cated on the evidence in the case, and we are also of the opinion that they should be confined to the issues in the case. Here there was no question between the parties in regard to the right or duty of the appellant, or any other railroad company, to erect cattle-guards, and as there was no question of that character involved, the court properly refused to instruct the jury in a matter foreign to the issue submitted.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*