The Terre Haute and Indianapolis Railway Co.

*v.*

Cora M. Williams, Admx.

*Opinion filed April 21, 1898.*

1. Railroads—*act requiring fences and cattle-guards is not merely to protect property.* The act on the fencing and operating of railroads, (Rev. Stat. 1874, p. 807,) which requires railroad companies to erect and maintain fences and cattle-guards as therein provided, is not intended merely for the protection of property, but for the protection of railroad employees and passengers, by keeping the track clear of obstructions.

2. Same—*employee is entitled to protection of act requiring fences and cattle-guards.* The act on fencing and operating railroads imposes on railroad companies an absolute duty to erect and maintain fences and cattle-guards as therein provided, and the company is liable to an employee who, while exercising due care, receives an injury because of the company's failure to perform such duty.

3. Same—*engineer not required to know condition of fences and cattle-guards.* The duties of a railroad engineer are not of such a nature as to direct his attention to fences and cattle-guards, and the law does not require that he have knowledge of their condition.

4. Same—*what will not charge engineer with notice of condition of fences and cattle-guards.* The fact that an engineer has passed through an unincorporated village several times a week for a number of years in running over the road, does not charge him with notice that the company has neglected to erect fences and cattle-guards at a highway crossing in such village, so as to amount to an assumption by him of the increased risk thereby occasioned.

5. Same—*when company is liable for death of engineer.* A railroad company is liable in damages for the death of an engineer caused by the derailing of his train on striking cattle which strayed on the track at a highway crossing where the company had neglected to erect fences and cattle-guards in violation of its duty, if the engineer was not negligent in running his train, and is not shown to have had notice of the absence of such fences and cattle-guards.

*T. H. & I. Ry. Co.* v. *Williams,* 69 Ill. App. 392, affirmed.

Writ of Error to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macon county; the Hon. Edward P. Vail, Judge, presiding.

This is a writ of error to the Appellate Court for the Third District to reverse a judgment affirming a judgment of the circuit court of Macon county, wherein Cora M. Williams, administratrix of the estate of James C. Williams, deceased, was plaintiff and the Terre Haute and Indianapolis Railway Company was defendant, being an action to recover damages for the death of Williams, caused, as is alleged, by the negligence of the railroad company.

T. J. GOLDEN, and W. C. OUTTEN, for plaintiff in error.

DAVID HUTCHISON, JAMES J. FINN, and ALEXANDER MCINTOSH, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

At the station of Tabor, where the accident happened, the railroad track was not fenced, and there was no cattle-guard where the public highway crosses the railroad, to prevent cattle from passing upon the track. Tabor is not an incorporated town or village, and it was not laid out into lots or blocks. The place consisted of a post-office, a grain elevator, one dwelling and several corn-cribs. On the night of the accident cattle strayed from an adjoining farm, and in the absence of a fence or cattle-guard they passed upon the railroad track, where they were struck by the engine attached to a freight train. The engine was thrown from the track, and Williams, the engineer, killed.

The theory of the plaintiff is, that the failure of the railroad company to fence its track and erect a cattle-guard at or near the place where the collision occurred, to prevent cattle from passing upon the track, was the direct cause of the accident and of the death of the engineer, and on account of the failure of the railroad company to discharge the duty imposed by law it is liable. On the other hand, it is claimed that the statute requir-

ing a railroad company to fence its track and erect cattle-guards was not passed for the protection of passengers or employees, but was enacted solely to provide a remedy for the owner of horses, cattle or other stock which might be killed on account of the failure of the railroad company to fence its track or erect suitable cattle-guards.

The statute seems to impose an absolute duty on railroad companies to erect and maintain fences along their rights of way and to construct and maintain cattle-guards at road crossings, except in such portions of incorporated cities, towns and villages as are laid out into lots and blocks. (Hurd's Stat. chap. 114, sec. 62.) It is true that the statute contains a provision that if such fences or cattle-guards are not made or kept in good repair such railroad corporation shall be liable for all damages which may be done by the agents, engines or cars of such corporation, to cattle, horses, sheep, hogs or other stock thereon; but this provision cannot be held to exclude all other liability which may arise from a failure of the railroad company to fence and put in cattle-guards, as required by law. It may be that the statute was primarily intended for the benefit of the owners of stock when their stock was killed on the railroad track, but at the same time the statute was doubtless intended for the benefit of all classes of persons who might need protection. The person whose business requires that he should take passage as a passenger on a train has a deeper interest in having the track protected from obstructions of every character than the owner of stock. So, also, the employee on a railroad train has a deep interest. The lives of the passenger and employee are alike at stake when the railroad is not properly protected from obstructions which are likely to be upon the track where it is not properly fenced. It is, therefore, unreasonable to suppose that the legislature would provide a law for the protection of property and make no provision whatever for the protection of life.

Counsel for defendant cite and rely upon *Wabash Railway Co.* v. *Brown*, 5 Ill. App. 590. Upon an examination it will be found that case is predicated principally on *Langlois* v. *Buffalo Railroad Co.* 19 Barb. 364. The principle, however, laid down in the *Langlois case* was repudiated by the New York Court of Appeals in *Donnegan* v. *Ehrhard*, 119 N. Y. 472. In the decision of that case it was among other things said: "A railroad company, for the safety of its passengers as well as its employees upon its engines and cars, is bound to use suitable care and skill in furnishing not only adequate engines and cars, but also a safe and proper track and road-bed. The track must be properly laid and the road-bed properly constructed, and reasonable prudence and care must be exercised in keeping the track free from obstructions, animate and inanimate; and if, from want of proper care, such obstructions are permitted to be or come upon the track, and a train is thereby wrecked and any person thereon is injured, the railroad company, upon plain common law principles, must be held responsible. * * * Independently of any statutory requirement a jury might find, upon the facts of a case, that it was the duty of a railroad company to fence its track, to guard against such danger. But whatever the rule would be independently of the statute, there is no reasonable doubt that it imposes the absolute duty upon a railroad company to fence its tracks. That duty, it is reasonable to suppose, was imposed not only to protect the lives of animals, but also to protect human beings upon railroad trains. It is made an unqualified duty, and for a violation thereof causing injury the railroad company incurs responsibility." The rule announced in the case last cited is fully sustained in *Atchison, Topeka and Santa Fe Railroad Co.* v. *Reesman*, 60 Fed. Rep. 370.

*Dickinson* v. *Omaha and St. Louis Railroad Co.* 124 Mo. 140, is also a case in point. There, as here, an action was brought to recover for the death of an engineer. There cattle had strayed on defendant's right of way through

a defective fence and the engine collided with the cattle and was thrown from the track. The railroad company was held liable. It is there said: "We can see no reason why, at common law, the railroad company would not as well be required to use reasonable care to prevent such obstructions as to see that the ties and rails are sound and the road-bed secure. I can conceive of no more adequate method that could be adopted by a railroad corporation for keeping domestic animals off the track of its road than that of inclosing it with fences. * * * It is true that the statute requiring railroad corporations to fence their tracks, only in express terms gives to the owners of cattle or other animals killed or injured in consequence of a neglect to perform this duty a right of action, yet it has been held in this State that the law was designed likewise for the protection and safety of the traveling public.—*Briggs* v. *St. Louis, etc. Railway Co.* 111 Mo. 173, and cases cited."

We are satisfied that a fair and reasonable construction of the statute required the railroad company to fence its track and construct cattle-guards, and for a failure to do so it is liable to an employee who may have been injured through its failure to perform a duty thus imposed by law.

It is, however, contended that the deceased assumed the risk arising from the failure of the railroad company to fence its track and construct cattle-guards at the place in question, because he knew that the track was not fenced and the cattle-guard was not constructed and yet continued in the service of the railroad company without objection. A railroad company is required to use reasonable and ordinary care and diligence in procuring suitable and safe machinery and appliances for its employees, and if an employee is injured through the failure of the railroad company to discharge the duty imposed upon it the company will be liable. Where, however, the employee continues to work with machinery or other ap-

pliances furnished by the employer after he has knowledge of its defective condition, as a general rule he will be deemed to have assumed the risk of such defects when he has not been led by the employer to believe that the defects would be remedied. (*Camp Point Manf. Co.* v. *Ballou,* 71 Ill. 417.) Here the accident occurred before daylight, at about 4:30 o'clock in the morning. It is not suggested that the negligence of the engineer in the management or running of the train contributed to the injury, but it is contended, from the fact that the engineer had run over the road two or three times a week for three years and had often stopped at Tabor for the purpose of switching cars, he must have known that the road was not fenced and that the cattle-guards were not constructed. The run of the engineer was from Terre Haute to Peoria —a distance of about 175 miles. It does not appear, from the evidence, that the deceased knew of the defects complained of, nor does it appear that there was anything in the nature of the duties of the deceased which would convey to him information in regard to the condition of the fence or cattle-guard. It is no doubt the duty of an engineer, in the management of his train, to look out and look ahead for obstructions or signals, and to look out for signals when switching, as suggested in the argument of defendant; but, so far as appears, there is nothing in the nature or character of the duties of an engineer which would direct his attention to the fences along the line of the track or the cattle-guards at a highway crossing. It is therefore unreasonable to believe that the engineer had notice of the condition of the fence and cattle-guards at the place where the accident occurred. It was held in *Chicago and Alton Railroad Co.* v. *Johnson,* 116 Ill. 206, that the law does not require that a brakeman on a freight train should know all the defects of construction and obstructions there may be along the line of the railroad. For a like reason it may properly be said that an engineer is not required to know the condition of the fences or

cattle-guards along the line of the road.    (See, also, *Illinois Central Railroad Co.* v. *Sanders*, 166 Ill. 270.)  The duty of fencing the track and constructing cattle-guards at highway crossings was imposed upon the railroad company, and the deceased had the right to believe that the railroad company had discharged its duty in this regard, hence there was no reason why he should be on the constant watch to learn the condition of the fences and cattle-guards.    *Illinois Central Railroad Co.* v. *Sanders, supra.*

We do not, therefore, think that it appears from the record that the deceased had notice that the track at the place of the accident was not fenced or that the cattle-guard was not in a proper condition.  An employee does not assume all the risks of the service in which he may be engaged, but he assumes only ordinary and obvious or known risks.   Such risks as are usually incident to the service and such as he ought to have known were incident thereto, or such as come to his knowledge and of which he does not complain or object to, may fairly be said to have been assumed by him.  (Wood on Master and Servant, 385.)   The principle involved in the rule announced is, that a servant cannot recover for an injury which grew out of his own negligence, and proof of his remaining in the service of the employer with knowledge of the risk and consequent danger may be regarded as negligence.   But here, as said before, it does not appear that the deceased had notice, and negligence could not therefore be imputed to him.

From what has been said it follows that the motion to instruct the jury to find for the defendant was properly denied, and the court did not err in refusing defendant's instruction No. 2.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. Justice Boggs took no part in the decision of this case.