THE CHICAGO AND IOWA RAILROAD COMPANY

*v.*

WILLIAM H. H. RUSSELL, Admr. etc.

1. NEGLIGENCE—*permitting obstruction near passing railway cars.* A railway company permitted a telegraph pole to stand, for a period of some three years, so near to a side track that it was within eighteen inches of freight cars passing on such track, so that a brakeman in descending from the top of a freight car while in motion, in the performance of his duty, came in collision with the pole, and was thrown from the car and killed. It was held to be culpable negligence in the railroad company to permit, for so long a time, such an obstruction to be in such close proximity to its track.

2.  Nor was it essential to the liability of the railroad company, in case of injury resulting from such obstruction, that it should itself have placed the telegraph pole where it was. It was enough that the company should have suffered it to be and remain in such dangerous proximity to the track.

3.  Same—*of notice to the company.* In November, 1875, a brakeman on a railway train was killed by reason of coming in collision with a telegraph pole which was in close proximity to the track. There was the testimony of one witness that he had known of the telegraph pole being where it was since in March, 1875, and of another, a brakeman on the road, that he once came in contact with the same pole in 1872: *Held,* from the length of time of the telegraph pole standing where it did, as shown by the evidence, the jury were warranted in finding that the company knew of it—that they ought to have known of it, and so might be considered as having notice.

4.  Contributory negligence—*as to injury received by an employee on a railroad.* Some freight cars were standing on a side track, to be attached to a train which was upon the passing track of the road. A locomotive and one car were switched on to the side track, a brakeman coupled the cars, and as they were moving out he climbed up on the side of a car next to the passing track, but, finding another brakeman on the top of one of the cars, he started down on the other side of the car—the business side—to turn the switch so as to throw the engine and cars attached to it back upon the passing track. In descending the ladder of the car, the brakeman was struck by a standing telegraph pole, which was only eighteen inches from the car, and knocked between the cars and killed. It was *held,* that, under the circumstances, the brakeman, in abandoning the safe side of the side track and going over the car to the obstructed side, was not guilty of such contributory negligence as would preclude a recovery against the company.

5.  The conductor had given express instructions to brakemen "not to get on or off the work side of cars, or get down or climb up while they were moving,—that is, round elevators, stock yards and so on." In this case it was not regarded that the brakeman violated this order, as there was no impediment between him and the telegraph pole when he attempted to get down.

6.  Nor was the brakeman chargeable with negligence in not looking and seeing the pole in time to save himself. There was no evidence he knew anything of the pole;—and his eyes, it may be supposed, were directed to the side of the car while he was in the act of getting down.

7.  It appeared that just before the accident the brakeman was seen to have hold of the round of the ladder above the roof of the car; that his feet were on the first round of the ladder on the side of the car, the rounds being about a foot apart; that that position extended his body backward from the line he would have occupied if he had stood upright; and it was claimed that in thus carelessly and unnecessarily extending his body backward he increased the danger of a collision with the telegraph pole. But it was not considered there

was such negligence on the part of the brakeman as to the mode of descending the car as should affect the right of recovery.

8. Evidence—*parol to show contents of telegram.* In a suit against a railroad company, whose superintendent was C. B. Hinckley, the court allowed parol evidence of the contents of a telegram signed C. B. H., without producing the original, or the foundation being laid for the proof of its contents, or proof that the telegram came from C. B. Hinckley the superintendent: *Held,* that the court erred in admitting the evidence.

9. Error—*will not always reverse.* An error in the admission of evidence, when it is not material enough to affect the result, is not fatal, or sufficient to authorize a reversal.

Appeal from the Circuit Court of Kane county; the Hon. H. H. Cody, Judge, presiding.

Messrs. Kretzinger, Veeder & Kretzinger, for the appellant.

Mr. A. J. Hopkins, and Mr. Charles Whéaton, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

This suit was brought by William H. H. Russell, as administrator of the estate of James C. Russell, deceased, against the Chicago and Iowa Railroad Company, under the statute of this State, for causing death by wrongful act, neglect or default.

The circumstances of the case were as follows:

On the first day of June, 1875, James C. Russell commenced work for the railroad company in the capacity of brakeman on one of its freight trains running from Aurora to Forreston and return. On the second day of November, 1875, as the train upon which Russell was employed was on its return trip to Aurora, the station agent at Mount Morris, a station on the road, informed the conductor when the train reached that place that there were two cars on one of the side tracks to be attached to his train. At that place there are three tracks, viz: the main track, the passing track and a back or business track. These two cars which were to be attached to this train

were on the back track. To take these cars with them the conductor and brakeman ran the train on the passing track, uncoupled the train, and, with engine, tender and one car, switched on the back track, coupled these and three other cars, and pulled out to switch back on the passing track. Russell had turned the switch when the engine, tender and car were backed down on this back track to take the cars there, and after assisting in coupling them, he climbed upon the first car back of the tender, but as the other brakeman was on top of one of the cars, Russell started to get down and turn the switch so as to throw the engine and cars back on the passing track and connect them to the main train. As he was climbing down the ladder of the car to throw the switch, he was struck by a standing telegraph pole, which was only eighteen inches from the car, and knocked between the cars on the track, run over and almost instantly killed. There was a verdict for the plaintiff, upon which judgment was entered, and the railroad company appealed.

Appellant claims that the evidence is not sufficient to support the verdict.

It is said there is a failure of proof that the telegraph pole was placed near the track by the railroad company, its agents or servants, or that the company had any knowledge or notice thereof.

It was not essential to the liability of the railroad company that it should itself have placed the telegraph pole where it was; it was sufficient that the company should have suffered it to be and remain in such dangerous proximity to the track.

It is true there is no direct evidence that the company had actual knowledge or notice of the position of the telegraph pole. There was the testimony of one witness that he had known of the telegraph pole being where it was since in March, 1875, and of another, a brakeman on the road, that he once came in contact with the same pole in 1872. From the length of time of the telegraph pole standing where it did, as shown by the evidence, the jury were warranted in finding

that the company knew of it—that they ought to have known of it, and so might be considered as having notice of it. This court has often decided that notice of a defect or obstruction will be presumed after the lapse of a sufficient time. *City of Springfield* v. *Doyle,* 76 Ill. 202; *City of Chicago* v. *Fowler,* 60 id. 322.

It is insisted further, that there was such negligence on the part of the deceased himself, as should prevent a recovery.

It appears that this back or business track was not used for passing trains, but that it was used for all working purposes, for cars to receive and deliver freight and for cars to stand on; that two warehouses, a coal shed, cattle shute, and some lumber stood on the outside of this business track; that when the deceased coupled the cars on the back track and the engine started to pull out, he was on the inside of the back track, that is, between the passing track and the back track; and that he climbed the side of the freight car on the inside of the back track while they were moving out, crossed over the car, and commenced to descend on the business or outside of the back track for the purpose of moving the switch.

There are four particulars wherein it is claimed there was this alleged negligence.

First, in abandoning the safe side of the back track by climbing over the car from the inside, an unobstructed side, and attempting to climb down on the outside, an obstructed side. The switch in question was on the outside, or so situated that the train man who turned it had to be on the outside of the back track. From the evidence it would seem that Russell had expected his co-brakeman to turn the switch as they went out on the passing track, and did not know to the contrary until after he had reached the top of the car.

It is said next, he violated the express order of the conductor in attempting to climb down on the outside of the business track. The instructions given in this respect, as testified to, were, " not to get on or off the work side of cars or get down or climb up while they were moving, that is, round elevators,

stock yards and so on." The evidence does not show satisfactorily that this order, as it was susceptible of being construed, was violated, as it appears that the deceased waited until the cattle shutes and elevator were passed, and there was no impediment between him and the telegraph pole, when he attempted to get down.

It is said again, deceased was negligent in not looking and seeing the pole in time to save himself. He had reason to believe, after the cattle shutes and elevator were passed, that the track was clear. His eyes, it may be supposed, were directed to the side of the car while he was in the act of getting down. There is no evidence that he knew anything of this telegraph pole, or that he was ever required, previous to this second day of November, 1875, to assist in switching cars off on this back track at Mount Morris.

It was testified, that just before the accident deceased was seen to have hold of the round of the ladder above the roof of the car; that his feet were on the first round of the ladder on the side of the car, the rounds being about a foot apart; that that position extended his body backward from the line he would have occupied if he had stood upright; and it is claimed again, that in thus carelessly and unnecessarily extending his body backward he increased the danger of a collision. The evidence upon that point was that men differ in their manner of getting off a car. Some do as deceased did; others sit down on the side of the car and throw themselves over on the ladder.

It certainly was culpable negligence in the railroad company to permit, for so long a time, such an obstruction to be in such close proximity to its track that an operative of the road should come in contact with the obstruction and be killed, when on a car, engaged in the necessary performance of his duties in the management of the train. We do not find in all the conduct of the deceased any such negligence on his part as should preclude a recovery in the case.

It is also urged that the court below erred in admitting

improper evidence on behalf of the appellee, and refusing proper evidence on behalf of appellant.

Plaintiff below gave evidence of the removal of the telegraph pole by one of the employees of the railroad company soon after the accident, in pursuance of a telegram signed C. B. H., C. B. Hinckley being·superintendent of the road. Against the objection of the defendant the court allowed parol evidence of the contents of the telegram to be given in evidence, without production of the original telegram, or the foundation being laid for the proof of its contents, or proof that the telegram came from C. B. Hinckley. In this we think the court erred. See *Railroad Company* v. *Mahoney*, 82 Ill. 73, as to the first point. But we do not regard that there was materiality enough in this evidence to make its admission a fatal error. In the other respects alleged of improperly receiving or rejecting evidence, we deem it sufficient to say that upon careful examination we find no error therein.

Error is also assigned in the giving of instructions on behalf of the plaintiff below, and refusing instructions asked on behalf of the defendant.

A large number of instructions were given on both sides, and we think the law of the case was very fully and fairly given to the jury. As viewed with reference to the facts of the case, we perceive no error in the giving or refusing of any instructions.

The judgment will be affirmed.

*Judgment affirmed.*