## WILLIAM WHALEN, ADM'R, ETC.

### v.

## ILLINOIS AND ST. LOUIS RAILROAD & COAL CO.

1. DUTY OF RAILROAD COMPANY.—A railroad company is bound to exercise reasonable care to furnish safe machinery, road-bed, track and structures connected therewith, and a person entering its employment has a right to presume that the company has discharged its duty in this regard.

2. MASTER AND SERVANT—PRESUMPTION OF KNOWLEDGE.—Where a person is engaged in a dangerous employment, the presumption of fact arises that he has knowledge of the ordinary perils of such employment, but there can be no presumption of knowledge of special dangers arising from a peculiar and exceptional state of affairs.

3. NEGLIGENCE—QUESTION FOR JURY.—Where a switchman, while in the discharge of his duties, was fatally injured by striking against the corner of a structure in the yard, and the evidence showed the company to have been culpably negligent in building the structure so near the track, and there were circumstances tending to prove a want of knowledge of the nearness of the corner of the house on the part of deceased, as well as circumstances tending to prove otherwise. *Held*, that it was error to instruct the jury that their verdict must be for the defendant; the appellant had a constitutional right to have the issue of fact submitted to the jury.

Appeal from the City Court of East St. Louis; the Hon. William P. Launtz, Judge, presiding. Opinion filed April 6, 1885.

Mr. A. R. Taylor and Mr. J. M. Freels, for appellant; as to the duty of railroad to furnish safe machinery, road-bed, track and structures connected therewith, cited I. C. R. R. Co. v. Welch, 52 Ill. 186; C. & I. R. R. Co. v. Russell, 91 Ill. 303; T. P. & W. Ry. Co v. Conroy, 68 Ill. 561.

The question of negligence should have been submitted to the jury: C. & A. R. R. Co. v. Bonifield, 104 Ill. 224; Penn. C. Co. v. Conlan, 101 Ill. 94; Wabash Ry. Co. v. Elliott, 98 Ill. 481; Lasure v. Grassville Mfg. Co., 18 S. C. 275; I. & St. L. R. R. Co. v. Morgenstern, 106 Ill. 220.

Messrs. G. & G. A. Koerner, for appellee; that plaintiff to succeed must allege and prove that the danger or defect which caused the injury was known to the defendant and was not known by the deceased, cited Dillon v. U. P. R. R. Co., 3 Dill. 120; Gibson v. Erie R. R. Co., 63 N. Y. 449; Baylor v. D., etc., R. R. Co., 40 N. J. L. 23; Wells v. B. C. R. & N. R. R. Co. (Ia.), 2 A. & E. R. R. Cases, 243; Clark v. St. P. & S. C. R. R. Co. (Minn.), 2 A. & E. R. R. Cases, 240; Nelson v. A. & P. R. R. Co., 68 Mo. 593; Rains v. St. L., I. M. & S. R. R. Co., 71 Mo. 164; Priestley v. Fowler, 3 M. & W. 1; Griffith v. L. & St. C. D. Co., Central L. J., Jan. 16, 1885; Clark v. Richmond R. Co., 30 Albany L. J. 252; Dewett v. Pacific R. R. Co., 50 Mo. 252; Owen v. N. Y. Cent. R. R. Co., 1 Lans. 108; B. & O. R. R. Co. v. Striker, 51 Md. 47.

Baker, J. This was an action on the case by appellant, as administrator, against appellee, to recover damages for the death of his intestate, alleged to have been caused by the wrongful act and default of appellee. John Whalen, the deceased, was in the employment of appellee in its yards at East St. Louis as a switchman, and on the 19th of December, 1882, while in the discharge of his duties as such, was brought in contact with the southeast corner of the scale shed of ap-

pellee, and knocked from the engine and killed by being run over and crushed by the cars of appellee thereto attached. The deceased was one of the three men constituting the switching crew, and on that day he was front man or foreman, and as such, it was his duty to be and remain with the engine, turn switches for it, make its couplings, etc. The engine was what is called a "dummy" or regular switch engine, and was used only for switching, making up trains, and similar work in the yards of the company. It had a step in front, another in the rear, and one on each side of it, and these steps were all so placed for the accommodation and use of the switchman, as his duty and convenience might require. If the road is properly built and all structures placed at a reasonably safe distance from the track, the switchman can discharge his duties unharmed by such structures, whether he be on the rear, front or side step of the engine.

Immediately before the accident, deceased had made the coupling of the car in rear of the engine to the rear end of the engine, and the coupling pin being bent he was unable to drive it down, and he was warned by the engineer the pin was liable to fly out or break and injure him, and thereupon he left the rear and got round on the side step of the engine, where he would be ready to jump off and turn two switches that were located a short distance beyond the scale house. The space between the side of the engine and the southeast corner of the shed where he was knocked off and killed, was only seven inches; and the shed had been erected by appellee, and maintained in this close proximity to this track for a period of several years.

At the trial, and after the introduction of appellant's testimony, appellee declined to produce any evidence. Thereupon the court refused to give the following instruction asked by appellant:

"The court instructs the jury that a railroad company is bound to exercise reasonable care to furnish safe machinery, road-bed, track and structures connected therewith, and that a person entering its employment has a right to presume that the company has discharged its duty in this behalf; and if

the jury believe from the evidence that the scale shed in question was constructed by the defendant, and that it was an unsafe and dangerous structure, and that the defendant had notice thereof before the injury, and negligently failed to use ordinary care to make it reasonably safe, and that by reason thereof the deceased, John Whalen, without notice of the unsafe or dangerous character of said shed, while in the discharge of his duty, with due care and caution, was without fault then and there killed, and that the plaintiff and next of kin have thereby sustained pecuniary loss in their means of support, then the jury will find for the plaintiff and assess his damages at such sum as they believe from the evidence to be just compensation for the pecuniary loss so sustained, not, however, to exceed $5,000."

And the court at the instance of appellee, and over the objections of appellant, instructed the jury as follows: " The court instructs the jury that in this case their verdict must be for the defendant."

In the case of the Chicago & N. W. Ry. Co. v. Swett, Adm'r, 45 Ill. 197, it was held that a railroad company is bound to provide suitable and safe materials and structures in the construction of its road and appurtenances, and that if. from a defective construction of its road and appurtenances, an injury happens to one of its servants, the company is liable; and in the opinion of the court it is said that the fireman was not required to know anything about such defective construction, and that the implied undertaking of his employers that the road and culverts and bridges were properly constructed and safe for the passage of trains, was sufficient for him.

In the case of I. C. R. R. Co. v. Welch, 52 Ill. 183, the corporation was held liable where a brakeman, engaged in the discharge of his duties, was knocked off the car by collision with a projecting awning from one of the station houses on the line of the road. The court refer to the rule announced in the Swett case and say: " When the appellee entered the service of this company he had a right to presume that it had in these respects discharged its obligations. The or-

dinary perils of railroad life he of course assumed, and also any special dangers arising from the peculiar condition of the road so far as he knew of their existence. For exposure to such dangers he would be supposed to demand and receive an increased compensation, and his exposure to them would be his voluntary act." In the case of the C. B. & Q. R. R. Co. v. Gregory, 58 Ill. 272, the court held, under the circumstances there in evidence, the corporation liable on account of the killing of a fireman on a locomotive, who was looking out for signals, and while so doing was struck by a " mail-catcher " which had been placed near the track by the company. The court there said: " Railway companies have no right to erect machines for any purpose, so near the track that the slightest indiscretion on the part of the employe will prove fatal. It is culpable negligence so to do." In ·the Chicago & Iowa R. R. Co. v. Russell, 91 Ill. 298, where a brakeman was killed by coming in collision with a telegraph pole standing near a side track, the court said: " It certainly was culpable negligence in the railroad company to permit, for so long a time, such an obstruction to be in such close proximity to its track that an operative of the road should come in contact with the obstruction and be killed, when on a car, engaged in the necessary performance of his duties in the management of the train." See also in this connection the case of the T. P. & W. Ry. Co. v. Conroy, 68 Ill. 560. There can be no serious doubt in the suit now before us, as to the culpable negligence, under the evidence in this record, of appellee. The question of its legal liability to respond in damages, seems to turn upon the point whether or not the deceased had knowledge of the danger or defect which caused the injury, and possibly upon a further point involving the doctrine of comparative negligence.

There was no direct or positive evidence whatever respecting his knowledge or want of knowledge of the existence of the obstruction and danger under investigation. The lips of the party who best could testify upon that issue have been sealed in death. There were but two witnesses who were examined upon that branch of the case. One of these wit-

nesses was Charles C. Molla, and he had worked with the deceased but one day, and he stated expressly that he did not know anything about Mr. Whalen's knowledge of the danger as respects " the nearness of that place." It appeared from the testimony of the other of said witnesses, Jacob Ruden, that the deceased had worked in the yards of appellee for about two weeks prior to the injury, and out on the belt road about two or three months, and that his duties while working on the belt would bring him into the yards twice a day. The witness further stated that during the time deceased was working on the belt, the engine would likely pass daily through the scale house, but he did not know, if deceased did; that he couldn't say that deceased was working ahead at that time, and that he might have been at the hind end of the caboose, and that he couldn't say as to whether he ever went through the scale house during the time he was out on the belt. He further stated that he supposed Whalen would not have done as he did, if he had known how near it was.

There was no evidence to show that deceased, during the two weeks he was working in the yards, had ever worked in or about the scale house prior to the time he was killed, or to show the extent of the yards of appellee. The question under consideration is as to knowledge on the part of deceased.

To say the very least, it is not an admitted fact of the case that deceased had knowledge of the nearness of the track to the corner of the scale house. It is always difficult to prove a negative, and especially to make proof of a want of knowledge on the part of a person who is dead. Where a person is engaged in a dangerous employment the presumption of fact arises that he has knowledge of the ordinary perils of such employment; but there can be no presumption of knowledge of special dangers arising from a peculiar and exceptional state of affairs.

In the Swett case, the court said " the fireman was not required to know;" and the Welch case is to the effect the employe has a right to rely and act upon the assumption the employer is not exposing him to peculiar and exceptional dangers.

It would seem to be a reasonable rule, deducible from the cases cited, that the right of the employe to act upon the assumption the employer has conformed to his legal duty by providing safe machinery and structures, has the effect to cast the burden of proof as to knowledge of defects upon the latter. In Wharton's Law of Evidence, chapter on Presumptions, section 1255, it is said "it will be inferred that a person of ordinary intelligence on being advised of danger will take ordinary care for self-preservation." But assuming there is no presumption the one way or the other, there were in evidence circumstances tending to prove a want of knowledge on the part of deceased, as well as circumstances tending to prove otherwise; and it was a question for the jury to decide upon a consideration of all the circumstances in proof, and of the testimony as a whole. As the matter stood, an issue of fact was presented, and appellant had a legal and a constitutional right to have that issue of fact submitted to the jury. This case is to be distinguished from Abend v. T. H. & I. R. R. Co., 111 Ill. 202, and some other cases, where there was no evidence proving or tending to prove one or more facts essential to a recovery.

We are of opinion it was error to refuse the instruction asked by appellant; and that it was also error to instruct the jury that their verdict must be for the defendant.

The judgment is reversed and the cause remanded, with instructions to award a *venire facias de novo*.

Reversed and remanded.