### Chicago & Alton R. R. Co. v. Pearl A. Stevens, Adm'x, etc.

1. NEGLIGENCE—*When Not a Matter of Law.*—In the absence of actual knowledge that a "foot-board" of a coal chute connected with a coal mine was so near the track as to render it unsafe for a brakeman to use the ladder on that side of the cars while passing, it can not be held as a matter of law that he must have known it was thus near and have assumed the extra hazard of its being so.

2. ORDINARY CARE—*When a Question of Fact.*—The question as to whether a brakeman upon a moving train is in the exercise of ordinary care while carrying a message from the conductor to the engineer, and in doing so, descending the ladder of a box car on the side toward the coal chute, contrary to the rules of the company, for the purpose of pass-

ing over a flat car on his way to deliver the message, is a question of fact for the determination of the jury, unless from all the facts proven and the reasonable deductions properly to be drawn therefrom, the court ought to conclude that a reasonable man would not have acted in the same manner.

3. Same—*Persons in Situations of Peril.*—In determining the duty of a person in a situation of peril, the proper test is, what would a man of ordinary prudence have done under like circumstances and with like knowledge at the time.

**Trespass on the Case.**—Death from negligence. Appeal from the Circuit Court of McLean County; the Hon. John M. Moffett, Judge, presiding. Heard in this court at the May term, 1900. Affirmed. Opinion filed September 11, 1900.

Scofield & Brown, attorneys for appellant; Wm. Brown, of counsel.

In a case where the verdict is clearly against the weight of the evidence it is not only the right, but the duty of a court of appeal to reverse the judgment. This is the rule notwithstanding that two or even three juries may have returned similar verdicts. Illinois Central R. R. Co. v. Patterson, 93 Ill. 290; A., T. & S. F. Ry. Co. v. Alsdurf, 68 Ill. App. 149.

Kerrick & Bracken, attorneys for appellee, contended that knowingly permitting the running board on the coal chute to be in such close proximity to its track as to injure its employe, Stevens, while he was in the discharge of his duties as such employe, and while he was exercising reasonable care for his personal safety, was negligence, for which the appellant is liable. C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; C. & A. R. R. Co. v. Johnson, 116 Ill. 206; I. C. R. R. Co. v. Welch, 52 Ill. 183; C. & I. Ry. Co. v. Russell, Admr., 91 Ill. 298; North Chicago St. R. R. Co. v. Williams, 140 Ill. 283; I. & St. L. R. R. Co. v. Whalen, 19 Ill. App. 116; Leonard v. Kinnare, 75 Ill. App. 145; Christianson v. Dunham T. & W. Co., 75 Ill. App. 267.

Mr. Justice Burroughs delivered the opinion of the court.

This case was before us at a former term, is reported in 80 Ill. App. 671, and a judgment in favor of appellee for

$5,000 was then reversed on the ground that the court gave an inaccurate instruction when the evidence was close and conflicting, as to whether or not appellee's intestate was in the exercise of ordinary care.

The case being remanded it was again tried and the jury failing to agree, a third trial by jury was had, which resulted in a verdict and judgment in favor of appellee for $2,471.42. Appellant prosecutes this appeal and urges us to reverse that judgment on the ground that the evidence does not support the verdict.

It appears that on August 2, 1897, Guy L. Stevens, appellee's intestate, commenced working for appellant as head brakeman upon a freight train running between Roodhouse and Bloomington, Illinois, and while he was going north on the forenoon of August 30, 1897, making his sixteenth trip over the line of this route, he collided with the foot-board (or "running board" as called by the witnesses) of the coal chute of the coal mine near the railroad track, about half a mile north of Tallula station in Menard county, and was so badly injured that he died from the effects thereof in a short time thereafter. When the collision occurred he was going down the ladder of the box car on the side toward the coal chute for the purpose of reaching a flat car between it and the engine; his purpose being to pass over the flat car and on to the engine to deliver a message to the engineer of the train from the conductor thereof, to the effect that the engineer should stop the train at Five Points (the next station on the line of the road north of Tallula, and about two and a half miles distant therefrom) and unload a car of cinders.

But for this message the train was not expected to stop at Five Points.

The conductor gave Stevens the message on the platform of the depot at Tallula after the train was in motion on its trip northward, and after all but the rear part of it had passed the platform, and he at once climbed to the top of the car on the rear end of the train, went forward toward the engine, walking over the tops of the cars until he reached

the forward end of the box car, where there was a flat car between it and the engine, and in order to reach this flat car, went down the ladder near that end on the side toward the coal chute, the ladder on the other side of this box car being near the rear end thereof. Just before starting down this ladder he was seen to wave his hand and smile at a young woman near the train, after which he continued down the ladder in the manner brakemen usually do. The train at this time was running from eight to ten miles an hour. Stevens was struck near his hips by the foot-board of the coal chute as he climbed down and was seen to fall to the ground immediately thereafter.

The coal chute in question had stood where it was at the time of the collision for about six years, and was a structure about twenty-four feet high, extending thirty-six feet along the east side of the main track, 28½ inches distant from the ladders of passing freight cars, but had a foot-board along the side toward the track, which was about seven feet from the level of the ground, three inches thick, twelve inches wide, and protruding toward the track so that its outer edge was only 16½ inches from the ladder that deceased was on when injured. This foot-board was permanently attached to the side of the coal chute, and was used for the employes of the coal company to stand upon, when operating the chute to deliver coal to the engines of appellant's passing trains, but the trainmen did not use it or have anything to do with operating the coal chute.

Twice, while deceased was working upon this freight train, the engine thereof had stopped and taken on coal at this chute, and he had passed it without stopping to coal at other times. When deceased was employed, and before going to work for appellant, he was given a copy of the rules of the railroad, which he receipted for in writing and therein promised to read and obey them; among these rules was one that required trainmen to use the ladder on the opposite side of cars from coal chutes and other structures along the tracks while passing in the vicinity thereof. The coal chute in question is constructed like many others along appellant's railroad (and other railroads).

Counsel for appellant, in their printed brief and argument, ably contend that the evidence shows the coal chute is not so near to the track as to unnecessarily endanger the trainmen, and that even if it is, yet the evidence shows that the deceased knew it was there; the rules of the company gave him notice that it was dangerous while in that vicinity, for him to use the ladder upon the side of the car toward it, and therefore he assumed all risk of being injured thereby, when he undertook to go down the ladder toward it, when passing in its vicinity; and that at all events, under the facts shown by the evidence, the deceased was not exercising ordinary care for his safety.

We appreciate now, as we did when the case was before us the first time, that under the evidence, it is a close question whether or not the foot-board of the coal chute was so near the tracks as to unnecessarily endanger the trainmen, and if it was, did the deceased know it was there, or should have known it, and was he in the exercise of ordinary care for his own safety.

We will first consider whether or not the outer edge of the foot-board of the coal chute was so near the ladders of passing cars as to unnecessarily endanger the trainmen while using them in the discharge of their duties. In I. C. R. R. Co. v. Welch, 52 Ill. 183, the court sustained a recovery where a brakeman was injured while ascending the ladder on the side of a car of a moving train toward the station house, when in so doing, he collided with the projecting awning of the station house, which was about even with the side of the car, and about eighteen inches above the top of it. In C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 273, where a fireman was killed by being struck while his engine was passing a "mail catcher" which was from seven to ten inches from the side of passing coaches; in Chicago & Iowa R. R. Co. v. Russell, 91 Ill. 298, where a brakeman on a moving train was killed by a telegraph pole eighteen inches away, while going down the ladder of a car toward it; in I. & St. L. R. R. Co. v. Whalen, 19 Ill. App. 116, where a switchman was killed while on the side foot-board of a

moving locomotive when passing a coal shed seven inches from where he stood; in Bryce v. C., M. & St. P. R. R. Co., 103 Iowa, 665, where a brakeman on a moving train was injured while descending a ladder on the side of a car, by the protruding end of a bolt in the side of the truss of a bridge fifteen inches away; in Dorsey v. Phillips & Colby Construction Co., 42 Wis. 583, where a railroad conductor was injured by a cattle chute fifteen inches distant, while ascending a ladder on the side of a freight car in motion; and in Kelleher v. M. & N. R. R. Co., 80 Wis. 584, where a switchman, while standing on the lowest step of the platform of a moving mail car, protruding his body to avoid water trickling from the roof of the car, was killed by a coal chute twenty-two and one-half inches from the side of the mail car at its nearest point. In view of the holdings in these cases, and remembering that the main part of the coal chute, which could be easily seen by the train men, was twenty-two and one-half inches from the ladder used by the deceased, a distance which might be fairly considered a safe one for them to use the ladders toward it when passing in its vicinity, provided they did not know it had a foot-board which protruded twelve inches nearer, that this foot-board was below the top of passing cars, and for that reason could not be so readily seen by them, and the outer edge thereof being only sixteen and one-half inches away from the ladders of passing trains—a distance which might be fairly considered an unsafe one for them to use the ladders on the side of the passing cars toward it in the vicinity thereof, we are constrained to hold that it is a question of fact which was properly submitted to the jury to determine whether or not the outer edge of the foot-board of the chute was so near the main track as to unnecessarily endanger the trainmen, and their verdict should not be set aside by an appellate court, whichever way the jury had found, on the ground of the evidence not supporting the verdict.

As to whether or not the deceased assumed the increased risk by reason of this foot-board being where it was, depends upon whether the proofs in this case show he either

knew, or, from his opportunities must have known, it was there. There is no positive testimony that the deceased knew it was there. Undoubtedly from his passing there fifteen times, at two of which the train he was on stopped while the engineer took coal, we are warranted in holding that in a general way he knew the coal chute was there, and from its size and general structure he doubtless saw it was far enough away from the tracks to make it reasonably safe to use the ladders of the cars toward it, but in the absence of positive proof that he knew there was a pro- truding foot-board there, the outer edge of which came much nearer to passing cars than the main structure, we do not feel that we ought to hold, as a matter of law, that he must have known it was there from proof merely that he had passed it fifteen times before, twice only stopping while the engine took coal, the other times passing it on a moving train, and while he was in the discharge of his duties as a brakeman, which did not require him to use any part of the coal chute, or take any part in its operation; especially when we consider that the foot-board was only seven feet above the ground, and for that reason could not be so readily seen by brakemen, whose duties, the evidence shows. kept them upon the tops of cars while the train was in motion, and when not in motion required them to ob- serve the wheels and lower parts of the cars; and in view of the rulings of the courts of this and other States, some of which we will refer to.

In I. C. R. R. Co. v. Sanders, 166 Ill. 270, a recovery was sustained where a brakeman received injuries on account of the failure of the railroad company to properly maintain its road-bed within one of the switching yards of a station on its line, and the brakeman had been running through the yards in question twice daily for three weeks before he was injured, and had frequently coupled and uncoupled cars in the yards when passing through; nevertheless, the court held that on account of his many duties as brakeman it was unreasonable to suppose that he had in that time become familiar with the condition of the track where

switching was required to be done along the entire. route
he worked during that time. In T. H. & I. Ry. Co. v.
Williams, 172 Ill. 379, a locomotive engineer was permitted
to recover where he was injured by colliding with live
stock that had gotten upon the track on account of the rail-
road company failing to protect its right of way by fences
and cattle-guards, and it was contended that the engineer
assumed the risk arising from such failure, because he knew
there were no fences or cattle-guards at the place he was
injured as required, he having run over the road two or
three times a week for three years, and had often stopped
at the place where he was injured for the purpose of switch-
ing cars, the court holding that the duties of an engineer
are not such as would direct his attention to the fact that
there were no fences and cattle-guards along the track, and
therefore it was unreasonable to believe that he, on that
account, had notice that there were none where he was
injured. In C. & A. R. R. Co. v. Johnson, 116 Ill. 206,
where a brakeman recovered damages for injuries received
by colliding with a bridge while passing over it on a mov-
ing train, the court approved an instruction to the effect that
the law does not require of a brakeman that he sh ould abso-
lutely know all the defects of construction and all the obstruc-
tions there may be along the line of the railroad, and that
he should neglect the performance of his duty as a brakeman
to be on the constant lookout for such obstructions and
defects which might be dangerous. In I. C. R. R. Co. v.
Welch, *supra*, it was also contended that the brakeman
injured knew or ought to have known the roof of the sta-
tion house with which he collided was there, and that he
assumed the increased risk of its being too near the track,
because he had been running over the road past the same
for two months; but the court held that in view of the fact
there are many depots and station houses upon the line of
the railroad, it would be preposterous to say, or to ask a
jury to say, that a brakeman engaged in the service of the
company must be held to know whether or not there may
be one among them whose roof or awning so projects that a

brakeman on a freight train in the performance of his duties would be liable to be swept from the train by colliding with it.   In Bryce v. C., M. & St. P. R. R. Co., *supra*, the brakeman had run past the bridge where he was injured twice a day for fourteen months before he collided with the bolt in the bridge truss, and for that reason it was urged he knew of the proximity thereof to the sides of passing cars, hence assumed the risk of its being so close; but the court held that in the absence of actual knowledge of the dangerous proximity of the truss of the bridge, the belt of which struck him, and the fact that the trusses of the bridge were only half the height of a box car, and for that and other reasons could not be easily seen, it ought not to be said, as a matter of law, that he had knowledge of the dangerous proximity of the projecting bolts therein to those using the ladders on the sides of the cars toward it; and in Dorsey v. Phillips & Colby Construction Co., *supra*, the conductor had run a freight train past the cattle chute which struck him, about six times a week for a period of four or five months, and it was contended that he knew, or ought to have known, the danger of it being where it was, and therefore assumed the increased danger of its being there, the court held that in the absence of actual knowledge that the chute was so near the passing cars as to render it unsafe to use the ladder toward it when passing, it was unreasonable to hold as a matter of law that he must have known it was so near, and that he did not assume the extra hazard of its being too near.

Finally, was the deceased in the exercise of ordinary care for his own safety when, in view of what he had seen and of the notice contained in the rule, and under all the other circumstances shown, he undertook to go down the ladder toward the coal chute while passing in the vicinity thereof? This being a question purely of fact, appellee had the right to have the opinion of a jury upon it, unless from all the facts proven, and the reasonable deductions properly to be drawn therefrom, most persons would at once say, or the court ought to conclude, that a reasonable man would not have done so.

Looking at the act now, in view of the consequences, we can readily see that it was dangerous. But that is not a proper test. The proper test is, what would a man of ordinary prudence have done under like circumstances, and with like knowledge at that time? It must be borne in mind that the deceased had been sent by the conductor, while the train was in motion, to deliver a message requiring a prompt delivery; that he must go over the cars from the rear end of the train, to the front, where the engine and engineer were; there is a flat car between him and the engine which he must pass over; that there is no ladder on the side of the box car away from the coal chute, down which he can go and reach the flat car, but there is one on the side toward the coal chute by which he can reach it; that from his general observation, the coal chute is too far from the side of the car to endanger a collision with it if he goes that way; so he attempts it, while obeying such direct order from the conductor, which, to be effectual, must be delivered promptly; he can, but does not wait for the train to pass the coal chute; he does not know there is a foot-board seven feet from the ground which protrudes much nearer to the cars than the other parts of the chute, and but for which he would doubtless have gone past safely; this foot-board did not then, nor had it before, attracted his attention, which had doubtless been properly given to his many duties as brakeman.

The jury have said that, in their opinion, he did what most men would have done under the same circumstances, and we think there is evidence from which they were warranted in arriving at that conclusion; and however much fair-minded men may differ as to its being a right or a wrong conclusion, yet it has so much warrant in the evidence, under all the circumstances, that we feel we ought not to hold that the jury found a verdict which is so far unsupported by the evidence, that an appellate court should say it is so clearly against the weight of the evidence that in fairness and justice to the parties, a new trial ought to be granted for that reason alone, when the trial was so fairly conducted

that appellant's counsel did not even claim an improper ruling on the evidence or the instructions was made by the trial court; and the conclusion árrived at from the evidence having the sanction of two juries and the approval of the trial judge twice; therefore, we will affirm the judgment. Judgment affirmed.