## Mobile & Ohio R. R. Co. v. Catherine Healy, Adm., etc.

1. JURISDICTION—*Dismissal of a Suit from Federal Court Without Determination, Does Not Prejudice Jurisdiction of Other Courts.*— When a case has been dismissed out of a court of the United States without any trial or determination of the merits, a new suit may be brought on the same cause of action in any court of competent jurisdiction.

2. RAILROADS—*Risk of Working in Yard Where Tracks Are Close Together Assumed by Employe.*—A railroad yard where trains are made up, necessarily has a great many tracks and switches close to one another, and any one who enters the service of the company in any work connected with the making up or moving of trains assumes the risk of that condition of things.

3. SAME—*Construction of Tracks an Engineering Question, Not for the Jury.*—The construction and proximity of tracks in a railroad yard used by railroad employes in their daily work is a question of engineering, and it is not for the jury to say whether their closeness is negligence on the part of the railroad.

4. INSTRUCTIONS—*When They Must be Accurate.*—Where the evidence is conflicting and irreconcilable, instructions must be accurate, and nothing that tends to support either side of such issues should be assumed as fact by the court.

Trespass on the Case.—Death from negligent act.  Appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding. Heard in this court at the August term, 1901.  Reversed and remanded. Opinion filed March 3, 1902.

William Healy, husband of appellee, was a switchman in appellant's yards at East St. Louis, Illinois, and was run over and killed by a string of cars which he and his co-servants were switching in said yards.

On the north side of the yards was a freight platform known as "A" house platform.

Immediately south of this platform and parallel therewith was the house track.

South of and parallel with the house track was a track known as the house track relay.

South of this house track relay and parallel therewith was the spur track.

South of this spur track and parallel therewith was track No. 1.

South of No. 1 and parallel therewith were fifteen other tracks numbered from 2 to 16 inclusive.

The freight platform and tracks ran east and west.

Said house track, house track relay, spur track and track No. 1 were close together and were used for standing cars, into which freight was to be loaded from or unloaded to said platform.

Switching crews would place the cars upon the four tracks next to the freight platform so that the doors of the cars would stand opposite to one another.

On account of the closeness of track No. 1 to the spur track, switchmen when working on track No. 1, would do their work on the south side of said track, there being more space between tracks Nos. 1 and 2 than there was between No. 1 and the spur track.

On the day of the accident the switching crew, of which the deceased was a member, set a string of cars upon track No. 1 to be unloaded upon said platform.

At the time these cars were so placed, a string of cars, among which were two refrigerator cars, was standing upon said spur track.

In the afternoon of the day of the accident the switch engine was coupled to the east end of the string of cars, which had been placed upon said track No. 1 by said switching crew, for the purpose of pulling said cars from said track. The foreman of the crew directed the deceased to ascertain whether the second car from the west end of said cars was empty. The deceased went around the west end of said cars to the north side of track No. 1 and hallooed, " This car is empty." Thereupon the foreman gave the engineer a signal to go ahead, which signal was obeyed. The deceased attempted to get on the rear car while it was in motion. When last seen alive he was running on the ground holding onto a car ladder. After the cars had moved about two car lengths, the foreman of the engine, and switchman Neville, who were hanging on the south side of the rear car, heard a jar as though the car had run over something. They got off the car and found the

deceased lying with his face close to the north rail of track
No. 1 with his right shoulder upon said rail and his right
arm extending across it. The right side of his head, his
right shoulder, the right side of his chest and his right arm
were crushed. His head was lying toward the east. His
body was a few feet east of the door of the refrigerator car
that stood upon said spur track.

The space between the spur track and track No. 1 was 6
feet and 8 inches; between the side of a refrigerator car
on the spur track and the side of a box car on track No. 1
was 2 feet and 11 inches, and between a refrigerator car
door folded back against the side of the car on the spur
track and the side of a box car on track No. 1 was 2 feet
and 3 inches.

The deceased's left-hand was crippled prior to the occur-
rence of the accident in question.

In February, 1899, appellee commenced an action in the
City Court of East St. Louis against appellant, laying her
damage at $5,000. Appellant, being a foreign corporation,
removed said cause to the Circuit Court of the United States
for the Southern District of Illinois.

At the January term, 1900, of said Federal court, appellee
filed an amended declaration charging appellant with neg-
ligence in suffering two of its tracks to be too close together
and in suffering a car door to extend out into the space
between said tracks, and alleging that said deceased was
struck and killed by said car door. Appellant filed the
general issue to said declaration.

After appellee had introduced her evidence in said court,
she took a non-suit by dismissing her case.

On the 15th day of February, 1900, appellee commenced
the present action against appellant in the City Court of
East St. Louis, laying her damage at $1,999.

The declaration charges appellant with negligence in
suffering two of its tracks to be too close together and in
suffering a car door to extend out into the space between
said tracks, and alleges that the deceased was struck and
killed by said car door. Appellant filed a plea to the jurisdic-

tion setting up the proceedings in the Circuit Court of the United States in said former action, to which plea a demurrer was sustained. Appellant then pleaded the general issue. The case was tried and resulted in a verdict against appellant for $1,999, from which this appeal.

LANSDEN & LEEK and GEORGE A. CROW, attorneys for appellant.

M. MILLARD and F. C. SMITH, attorneys for appellee.

MR. PRESIDING JUSTICE WORTHINGTON delivered the opinion of the court.

Counsel for appellant urge that the court erred in sustaining the demurrer to the plea to the jurisdiction. The plea alleges in substance:

That appellee, on the 21st day of February, 1899, commenced an action against appellant in the City Court of East St. Louis, for $5,000 damages for the killing of the deceased by appellant; that upon the petition of appellant the case was removed into the United States Circuit Court, for the Southern District of Illinois; that appellee, in said court, filed an amended declaration just like the declaration filed in this action, and that appellant filed the plea of the general issue; that said cause was tried on its merits at the January term, 1900, of said United States Circuit Court, and that after appellee had introduced all of her evidence and closed her case, said court was in the act of directing a verdict for appellant when appellee took a non-suit; that the parties in the said former suit and in this suit are the same parties, and that the causes of action in the said former suit and in this suit are the same; and praying judgment whether said city court could or would take further cognizance of the action.

There was no error in sustaining the demurrer to this plea. The plea shows that the case was not decided in the Federal court, but was dismissed by plaintiff before any decision was rendered. A demurrer to a similar plea was sustained in C., C., C. & St. L. Ry. Co. v. Lawler, 94 Ill.

App. 38. In Gassman v. Jarvis, 100 Federal Reporter 146, it is said: "When a case has been dismissed out of a court of the United States without any trial or determination of the merits, it is not perceived why a new suit may not be brought on the same cause of action in any court of competent jurisdiction." To the same effect are: Swift & Co. v. Hoblawitz, Vol. 61, No. 12, Pacific Reporter, page 969, and McIver v. F. C., etc., R., 110 Ga. 223, overruling Cox v. Railroad, 68 Ga. 446, cited by appellant.

The negligence charged in the declaration is that appellant "had and allowed two of said railroad tracks to be without sufficient space between the same for the reasonably safe and convenient switching and handling of cars thereon, and then and there negligently had and allowed the door of a certain car standing on one of said tracks, to be open and projecting into the space between said tracks " by means whereof the deceased was struck, etc.

In St. Louis National Stock Yards v. Burr, decided at the February term of this court, but not yet reported, where it was alleged that the tracks, being six feet and three inches apart, were too close together, we said:

"In C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330, it is said: 'The manner of constructing a railroad is an engineering question. A railroad company can not be required to adopt any particular method of construction. * * * Public policy does not require courts to lay down any rule as to the manner of the construction of railroads. * * * It is not a question for a court to submit to a jury whether the manner of construction of a railroad is proper or not.' And in Randall v. B. & O. R. R. Co., 109 U. S. 478, it is said: 'A railroad yard where trains are made up, necessarily has a great number of tracks and switches close to one another, and any one who enters the service of a railroad company in any work connected with the making up or moving of trains assumes the risks of that condition of things.' The law which requires a railroad company to furnish reasonably safe machinery, and to keep its tracks, engines, cars and appliances in reasonably safe repair, has no application to such engineering questions as the one involved in this case." To the same effect are: Tuttle v. D. T. G. & M. Ry. Co., 122 U. S. 189; Goldthwait v. H. &

G. St. Ry. Co., 160 Mass. 554; Lovejoy v. Railroad Co., 125 Mass. 79.

In the case at bar, the deceased was an experienced switchman and familiar with the yard and its tracks. The space between the spur track and track No. 1, was six feet and eight inches. The construction and proximity of these tracks in a railroad yard used by railroad employes in their daily work, was a question of engineering. It was not for the jury to say whether their closeness was negligence on the part of appellant. One jury might say that it was and another jury might say that it was not. That there were risks in working in such a yard can not be denied, but these were risks that were open and apparent. They are incident to the business of handling and switching cars in a railroad yard, and so far as the closeness of the tracks is involved, they must be held to have been assumed by the deceased.

It is alleged that a door of a refrigerator car was open and projected over a part of the space between the tracks; that this was negligence on the part of appellant; and that the deceased met his death by coming in contact with this door, while climbing up the side of a car as it was being hauled out of the yards.

The evidence upon these allegations is conflicting and irreconcilable. Under such conditions it has been repeatedly held that instructions must be accurate. Nothing that tends to support either side of such issues should be assumed as fact by the court.

The first instruction given for appellee is as follows :

" The jury are instructed that although the plaintiff's husband assumed the risks ordinarily incident to the service in which he was engaged, and the risk of such defective appliances as were obvious or known to him, he did not assume the risk of being injured by the negligence of other employes of the defendant, unless they were fellow-servants, as defined in the instruction given on that question."

In saying that " he did not assume the risk of being injured by the negligence of other employes," etc., the jury may have inferred that the judge believed that other em-

ployes were negligent. It was for the jury to say from the evidence whether or not appellant's employes in charge of the yard and cars were negligent. This was the first instruction given and should have contained this limitation.

The third instruction assumes that leaving the door of the refrigerator car " open and not latched back," was negligence. The declaration alleged that it was negligence, but this allegation was to be established by proof. Leaving the door open and unfastened might or might not be negligence, depending upon the environment. Negligence was not, then, to be assumed by either court or jury without proof of such conditions as would make it negligence.

The fourteenth instruction is as follows :

"If the jury believe from the evidence that the foreman of the switching crew with which the plaintiff's husband was working at the time of the accident directed him to go between the tracks and see whether some cars had been unloaded, that while he was in and between the tracks doing the work he was ordered to perform, the foreman, without giving him any notice or warning, directed the engineer to start the engine in motion, and that the engine and cars were started and put in motion in pursuance of such direction of the foreman, that the door of the refrigerator car was left projecting out into the space between the tracks instead of being closed or latched back, that the defendant company was guilty of negligence in having or allowing such car door to be in the condition mentioned, *which directly caused the injury to and death of plaintiff's husband,* and that he was in the exercise of ordinary care for his own safety before and at the time of the injury, the defendant is liable and the plaintiff is entitled to a verdict."

The first part of this instruction improperly calls attention to the acts and direction of the foreman of the switching crew of which the deceased was a member, in such a way that the jury might infer that he was negligent, and that such acts and directions, in connection with the open car door, caused the death of the deceased. There is no allegation in the declaration charging negligence or improper conduct on the part of the foreman, or that the deceased lost his life on account of obeying an order of his foreman.

The part of the instruction which for convenience of reference is italicized, affirms as fact, what is denied by appellee. It assumes that if the car door was open as described in the instruction, that its being open caused the death of the deceased, the language being, "*which directly caused the injury to and death of plaintiff's husband.*"

The theory of the defense was that the deceased fell while trying to climb on a moving car, or while running by the side of it. It might be that the door did project, and yet that the deceased fell without being struck by it. There are some facts in evidence which tend to support such a theory.

Similar errors as these specified, have been frequently condemned when the evidence is conflicting upon material allegations. The following cases are in point: City of Chicago v. Bixby, 84 Ill. 86; Ins. Co. v. Crawford, 89 Ill. 64; I. C. R. R. Co. v. Zang, 10 Ill. App. 597.

Appellee insists that if there are errors in these instructions, that the series of instructions taken as a whole, cure the errors, and that for this reason, they are not misleading. If the evidence was not conflicting upon the issues touched by these instructions, this might be so. But the issues they touch are material, and the evidence upon them is squarely conflicting.

There was no error in refusing the peremptory instruction asked by appellant to find for defendant. There was sufficient evidence tending to support appellee's declaration, to warrant the submission of the case to the jury. Nor do we think there was error in allowing testimony as to deceased's character as a careful and prudent man. While he was seen but a short time before the accident, he was not seen at the time of its occurrence, so that any witness could testify exactly how it did occur.

For the reasons above stated, judgment is reversed and the case remanded.