115    621
a214s  124

Mobile & Ohio Railroad Company v. Martin P. Vallowe.

1. ASSUMED RISKS—*what not within doctrine of.* The law does not recognize the master's negligence as a risk incident to the servant's employment.

2. COLLATERAL EVIDENCE—*when, not admissible.* Evidence that a particular device had been used for a period of years without resulting injury is immaterial and properly excluded.

3. INSTRUCTIONS—*how to be considered.* Instructions are to be considered as a series.

4. ENGINEERING PROBLEMS—*what not, so as to preclude plaintiff's theory of negligence.* Held in this case that the construction of a coal chute and certain railroad tracks in connection therewith did not involve such an engineering problem as to preclude the claim of negligence relied upon by the plaintiff.

Action on the case for personal injuries. Appeal from the Circuit Court of Monroe County; the Hon. ROBERT D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1904. Affirmed. Opinion filed September 9, 1904.

LANSDEN & LEEK, for appellant.

BOLLINGER, WINKELMAN & BAER, for appellee.

Mr. Presiding Justice Creighton delivered the opinion of the court.

This was an action in case, in the Circuit Court of Monroe County, by appellee against appellant, to recover for a personal injury sustained by appellee while in the service of appellant as brakeman on one of its freight trains. Trial by jury. Verdict and judgment in favor of appellee for $1,500.

Appellant had in use at Willisville, a small way station in Perry County, Illinois, a main track, two side tracks, designated track No. 1 and track No. 2, and a spur track. A coal mine was in operation at this place, and the side tracks were used not only for the ordinary purpose of such tracks at such stations, but they and the spur track were used for the purpose of putting cars onto them to be loaded with coal and pulling the loaded cars out over them to the main track. These tracks extended substantially parallel with the main track for a distance of half a mile or more, and passed under certain coal chutes which were elevated above the tracks to a height sufficient to deliver the coal into cars, when placed under them to be loaded. The coal chutes were supported by upright posts, eight inches square. As to track No. 1, there was ample space between the posts and the cars, but as to track No. 2, the supporting posts stood so close to the track that there was only from nine inches to one foot space between the posts and the side of a passing car. There was some incline in the track at that place and when a "cut of cars" was being shoved in, it was necessary to get on the cars to set the brakes to stop the cars and hold them at the required place.

Appellee was rear brakeman on one of appellant's local freight trains which stopped at Willisville and put off and took on freight and shoved in empty coal cars and pulled out loaded ones, as occasion might require. Some of his duties were to look after merchandise, handle freight, look over trains to see if there were any hot boxes, and to climb the cars and set brakes. He had been in this service on this division of the road for about four weeks, had

passed Willisville station many times, knew there was a coal mine there, knew the side tracks ran under the coal chutes and knew the coal chutes were supported by posts. His train had stopped and he had done his part of the work there a good many times, but his work at that place had been mostly that of looking after merchandise, handling freight and looking over trains. He had done some braking there, had braked some on track No. 1. In addition to the facts above stated the evidence tends to prove that appellee had never done any work on track No. 2, that he knew there was plenty of space between the posts and passing cars on track No. 1, that he did not know and had never been informed that the posts stood dangerously close to track No. 2, or that it was in any respect dangerous, and that he had never had any occasion to go on that track before the time he was injured. The station is sixty or seventy yards from the coal chutes.

On the occasion of the injury, when they were about through taking out freight, and the conductor was in the act of leaving the way-car, he " told appellee to ride the rear end of the car to set the brake; * * * to get on the rear end of the car and set the brake, * * * when the boys were shoving the cut of cars back." At this time a cut of cars, eight or ten in number, was being shoved back onto track No. 2, at a speed of about eight miles an hour. It was a dark, rainy day " and the whole chute was full of steam." When appellee reached the car he was directed to brake, it was about thirty feet from the coal chute. It was necessary for him to catch it from the side; his first hold slipped and he caught the second hold and climbed on the ladder of the car near the corner, and while in the act of swinging around the corner to get on the end of the car to set the brake he was struck by one of the posts, knocked off and seriously injured.

The grounds upon which counsel for appellant claim a reversal of the judgment in this case are: the refusal of the trial court to direct a verdict; the refusal of the trial court to admit certain evidence offered on behalf of appel-

lant; the giving of the first, second and third instructions on behalf of appellee; the refusing to give a certain instruction as asked on behalf of appellant, and the modifying of the same, and giving it as modified.

In support of their contention that the trial court erred in refusing to direct a verdict in favor of appellant, counsel invoke the rule that " A servant assumes all the risks incident to his employment," and insist that appellee's injuries were the result of dangers wholly incident to the service in which he was engaged. That rule has no application to the facts of this case. The charge here is that the injury was the result of the master's negligence. The law does not recognize the master's negligence as a risk incident to the servant's employment. C. & A. R. R. Co. v. Howell, 109 Ill. App. 546, affirmed in 208 Ill. 155; C. & A. R. R. Co. v. Johnson, 116 Ill. 206; C. & E. I. R. R. Co. v. Hines, 132 Ill. 161; C. & A. R. R. Co. v. House, 172 Ill. 601; City of La Salle v. Kostka, 190 Ill. 130; C. & G. T. Ry. Co. v. Spurney, 197 Ill. 471; C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492.

In further support of their contention that the risk was an assumed risk on the part of appellee, counsel state that " the coal chute and the side tracks leading thereunder were necessary and proper instrumentalities for carrying on the business of appellant," and argue in effect that the facts of this case call for the application of the rule that " the manner of constructing a railroad is an engineering question that cannot be submitted to a jury on a charge of negligence." In C. & A. R. R. Co. v. Howell, 109 Ill. App. 546, a case like the case at bar in all its controlling facts, we had this question under consideration, and we there said: " Whatever may be the proper application of this view of the law in this state, and to whatever length it may have been extended and applied elsewhere, our courts have not recognized it as applicable to structures of any kind erected or maintained in connection with the operation of the road, such as ' mail-catcher,' telegraph pole, coal shed, flag station, awning post, coal chute, scale house,

switch-stand, or other structures." Some of the Illinois cases bearing directly upon this question are : C. & A. R. R. Co. v. Howell, 109 Ill. App. 546, affirmed in 208 Ill. 155; I. C. R. R. Co. v. Welch, 52 Ill. 183; C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; C. & I. R. R. Co. v. Russell, 91 Ill. 298; Whalen v. I. & St. L. R. R. Co., 16 Ill. App. 320, same case in 19 Ill. App. 116; C. & A. R. R. Co. v. Stevens, 91 Ill. App. 171, affirmed in 189 Ill. 226; Ill. Ter. R. R. Co. v. Thompson, 112 Ill. App. 463.

Counsel insist that appellee had been at work on the division of the road in question for a considerable length of time, had passed the station and seen the tracks and coal chutes and posts many times, and had done some work on track No. 1, and must have known of the danger, and therefore assumed the risk, or, if he did not know of the danger, it was his own fault, in not exercising due diligence to observe, and therefore he must be deemed to have assumed the risk. In I. C. R. R. Co. v. Welch, 52 Ill. 183, counsel for appellant contended, as counsel do here, that a person engaged for a particular service and knowing or having the means of knowing all the conditions, assumed all the risk arising therefrom. The court replies : " As a general legal proposition this is undoubtedly true, but we are of opinion that it does not cover the facts of this case. There are many freight depots and station houses upon the line of the Central Railway, and it would be preposterous in us to say, that a brakeman engaged in the service of the company must be held to know whether or not there may be one among them whose roof or awning so projects over the line of the road that a brakeman upon a freight train, in performance of his duties, would be liable to be swept from the train by collision with it. * · * * It would have been morally impossible for him to have ascertained the existence of all such special perils as this which caused the injury * * * and moreover * * * the danger was of such a character that, it might well escape the observation of a person who had been even for a long time upon the road." And in C. & A. R. R. Co. v. Howell, 208.

Ill. 155, the Supreme Court said : " It appears that appellee had thrown the switch there at least once, but it does not appear that he ever stood on the side of the track while an engine or car passed, so that he would have an opportunity to observe how dangerously close the switch-handle, when turned towards the track, would be to a passing car. It is easy to see that he could go to the switch-stand, throw the handle over towards the track and pass on about the performance of his duties without any time being in a position where he would observe or have his attention called to the proximity of the handle to a passing freight car. He, himself, testified that he did not know." How strikingly analogous the facts, and how applicable the reasoning, to the case at bar.

Counsel further contend that appellee was instructed and warned as to this particular danger. This was one of the issues of fact submitted to the jury, and the state of the evidence fully warranted the jury in resolving such issue as it did, in favor of appellee. And in this same connection counsel insist that appellee was guilty of contributory negligence. This also upon the evidence as it is disclosed in the record, was a proper question of fact for the jury to determine. We are of opinion that the trial court did not err in denying appellant's motion to direct a verdict in favor of appellant.

During the trial appellant sought to prove that the track and coal chute had been in use for five or six years, "and that no injury had ever occurred to a brakeman there prior to the time appellee was injured," and they complain of the refusal of the trial court to admit this proffered evidence. The proffered evidence was immaterial, and the trial court properly refused to admit it. In Hodges v. Bearse, 129 Ill. 87, appellant sought to prove that no accident had happened previous to the one in question during the four and a half years the elevator had been in use. The court say : " We are unable to see how the evidence excluded could be in any degree material. The evidence in relation to the negligent and improper construction of the elevator and

its appurtenances would not be rebutted by proof that such construction had never before happened to result in an accident. Such evidence would only tend to distract the attention of the jury by raising a multitude of collateral issues having no material bearing upon the questions to be decided."

Complaint is made of the giving by the trial court of the first, second and third instructions given at the instance of appellee. All of these instructions state correct propositions of law. C. & A. R. R. Co. v. Johnson, 116 Ill. 206; C. & E. I. R. R. Co. v. Hines, 132 Ill. 161; I. C. R. R. Co. v. Sanders, 166 Ill. 270; T. H. & I. Ry. Co. v. Williams, 172 Ill. 379; Ill. Ter. R. R. Co. v. Thompson, *supra;* C., C., C. & St. Louis Ry. Co. v. Walter, 147 Ill. 60. It is apparent to the court that when the instructions complained of are considered in connection with all the other instructions given, as must be done in this case, they could not have misled the jury. They are in no respect repugnant to any other instructions given, and in all respects fall within that class where the whole series must be considered together, as one charge.

Counsel for appellant asked the court to give the following instruction, which the court modified by adding the words in italics, and gave it as modified :

" The court instructs you that the construction of the coal chute described in the plaintiff's declaration and the location of the defendant's tracks under said chute involve engineering questions, and the plaintiff cannot recover in this case on the ground that the upright posts which supported the top of the coal chute were too close to the railroad track running under said chute. *Providing you believe from the evidence that the plaintiff had notice of the position of said posts or by the exercise of ordinary care for his own safety could have had such notice.*"

This is assigned as error, and counsel insist that whatever may be the law as to structures erected or maintained dangerously near to main tracks, there can be no liability for erecting or maintaining such structures along a side track, or elsewhere except along a main track. The authorities cited by counsel do not support their position.

In Phelps v. C. & W. M. Ry. Co., 122 Mich. 171, cited and quoted from at length, the structure complained of was a fish chute, abutting upon the main track. All that is there said about side tracks in that opinion is mere *obiter dicta.* The facts in M. & O. R. R. Co. v. Healy, 100 Ill. App. 586, are wholly dissimilar to the facts in the case at bar, and place that case in a different class. Counsel's position is neither supported by the better reason nor by the weight of authority. Our own courts have had this question directly under consideration. In C. & A. R. R. Co. v. Howell, 109 Ill. App. 546, affirmed in 208 Ill. 155, above cited, the structure complained of was a switch-stand on a side track. In Ill. Ter. R. R. Co. v. Thompson, *supra,* the structure complained of was a telegraph pole, on a side track in the Illinois Glass Co. yard. In C. & I. R. R. Co. v. Russell, 91 Ill. 298, the structure complained of was a telegraph pole on a side track. In Whalen v. I. & St. L. R. R. Co., 16 Ill. App. 320, the structure complained of was a scale shed on a switch track. To the same effect are Sweet v. Mich. Cen. R. R. Co., 87 Mich. 559; Dorsey v. P. & C. Construction Co., 42 Wis. 583; Robel v. C., M. & St. P. Ry. Co., 35 Minn. 84.

We are of opinion the trial court did not err in modifying the instruction.

Finally, counsel insist that the verdict is against the weight of the evidence. The record discloses a state of evidence proper for the jury to weigh. It was for the jury to determine as to the weight or preponderance of the evidence. It is only where the verdict is so manifestly against the weight of the evidence as to make it apparent to the court that the verdict was not the result of the impartial and honest judgment of the jury, but that it must have resulted from mistake, or from partiality, prejudice, passion or some improper motive or condition, that a court is warranted in setting aside a verdict on the ground alone that it is against the weight of the evidence. St. Louis National Stock Yards v. Godfrey, 101 Ill. App. 40-48.

We find no material error in this record. The judgment of the Circuit Court is affirmed.

*Affirmed.*